EDMUND A. WHITMAN & another, trustees, vs. MABEL H.
HUEFNER & others.

Middlesex.    March 10, 1915. — May 21, 1915.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Trust*, Construction, Powers and duties of trustee.  *Devise and Legacy.    Real
Property.*

A testator by his will gave the residue of his estate to trustees in trust to pay the
income to his wife for life, with power to pay to her out of the principal such
amount as should meet the requirements of her suitable maintenance and the
care and education of his minor children, the will further providing that upon
the decease of the widow the trustees should "pay over to my children and to
the issue of any deceased child by right of representation all of said trust fund
then remaining, share and share alike, the issue of any deceased child to take
the share the parent would have taken, if living, to have and to hold the same
to them and their heirs."   From other provisions of the will it appeared that the
testator had used language nearly identical to provide for the distribution
of the trust fund in case of the death of his widow without remarrying, and upon
her remarriage and upon her death after remarriage.   *Held*, that by the es-
tablished rules of construction the interest of the children of the testator vested
at his death, the mere fact that the trustees were authorized to expend principal
during the widow's life and thus to decrease the size of a remainderman's share
not establishing an intention to postpone the vesting until the widow's death.
Where the language of a will does not make it clear whether a certain remainder
is vested or contingent, the remainder will be deemed to be vested unless such
construction would result in a disposition of the property inconsistent with
the testator's intention.
Where property is given in remainder by the provisions of a will, whose language
does not clearly state whether the remainder is vested or contingent, to chil-
dren or other descendants of the testator, that circumstance tends to indicate
that vested rather than contingent remainders were intended.
Where by the provisions of a will trustees are given power and authority to sell
and convey and to make new investments and exchange of securities, but the
will contains no express direction that the real estate held by them shall be sold
and turned into money and a clear intention thus to convert cannot be im-
plied from the language or general scope of the will, if the trustees sell the real
estate the proceeds thus received must be treated by them as realty until the
fund resulting from the sale reaches the hands of one who is entitled to treat
it as his own absolutely and for all purposes.

BILL IN EQUITY, filed in the Supreme Judicial Court on Jan-
uary 2, 1915, by the trustees under the will of William C. Haskins,
late of Medford, for instructions.

The case was reserved by *Carroll, J.,* upon the bill and answers for determination by the full court. The following statement of the case is taken from the opinion of the court.

William C. Haskins died in 1892, leaving a will in which, after providing for the payment of his debts and for the care of his cemetery lot, he gave the residue of his estate to trustees in trust to pay the income to his wife for life, with power to pay to her out of the principal such amount as should meet the requirements of her suitable maintenance and the care and education of his minor children. The will then provided: "And upon her decease to pay over to my children and to the issue of any deceased child by right of representation all of said trust fund then remaining, share and share alike, the issue of any deceased child to take the share the parent would have taken, if living, to have and to hold the same to them and their heirs."

There were living at the testator's death his widow, Maria E., a married daughter, Hannah C. Coburn (now the defendant Hannah C. Jackson), a son, William, and a daughter, Alice B., and no issue of any deceased children. William Haskins died April 24, 1899, intestate and without issue then living. He left a widow, Mabel Haskins (now the defendant Mabel H. Huefner), who is the administratrix of his estate, and as next of kin his mother, Maria E. Haskins. Alice B. Haskins married the defendant Arthur C. Crombie, and died intestate August 5, 1903, leaving a daughter Barbara who died July 18, 1905, under the age of four years. The defendant Arthur C. Crombie is the administrator of the estate of his wife Alice B. Maria E. Haskins, the widow of the testator William C. Haskins, died on October 19, 1914. She left a will, not yet proved, in which the defendants Marion C. Sawyer and Alice C. Nottage are named as residuary legatees.

William Haskins, senior, died on May 19, 1871, testate; and certain questions arise under the fourth clause of his will.

*E. A. Whitman,* for the plaintiffs, stated the case.

*G. D. Burrage,* for the defendant Mabel H. Huefner.

*W. I. Nottage,* for the defendant Arthur C. Crombie.

*B. Corneau,* for the defendant Hannah C. Jackson.

*C. R. Lamson,* for the defendants Marion C. Sawyer and Alice C. Nottage, submitted a brief.

DE COURCY, J. [After the foregoing statement of the case.] 1. The principal question relates to the disposition of the remainder of the trust fund under the will of William C. Haskins; that is, whether it vested at the death of the testator in his three children then living, or was contingent until the death of the testator's widow and thereupon vested in his only child and issue then living. The intention of the testator not being clearly manifested by the language of the clause in controversy, we must resort for aid to the established rules of construction that long have been applied to similar clauses in like cases. One that is well settled is that no remainder will be construed to be contingent which may, consistently with the intention of the testator, be deemed vested. *Bosworth* v. *Stockbridge*, 189 Mass. 266, and cases cited. And where, as in this case, the remainder is to children or other descendants of the testator, that circumstance tends to indicate that vested rather than contingent remainders were intended to be created. *Gibbens* v. *Gibbens*, 140 Mass. 102. *Stanwood* v. *Stanwood*, 179 Mass. 223. *Southard* v. *Southard*, 210 Mass. 347.

When we consider the rest of the will, we find support for the construction that the testator intended to create vested remainders by the clause in question. This is especially true of the portion of the third article, where provision is made in case of the remarriage of his widow, as follows: "upon that event I direct my said trustees to pay over to my children and to the issue of any deceased child by right of representation, equally, two thirds of said trust fund, the issue of any deceased child to take by right of representation the share the parent would have taken, if living, the share of said two thirds payable to either of my children to be paid to such of them as shall have arrived at the age of twenty one years as soon as may be after the marriage of my wife, and the share thereof payable to such of my children as shall not at the time of the marriage of my wife have arrived at the age of twenty one years to be paid upon their attaining the age of twenty one years, to have and to hold the same to them and their heirs; and the remaining one third part of said trust fund to continue to hold and keep safely invested and the income thereof to pay over to my wife quarterly at least for and during the full term of her natural life, and upon her decease to pay over the said

remaining third or principal sum then held for the benefit of my wife unto my children and the issue of any deceased child to take by right of representation the share the parent would have taken, if living, to have and to hold the same to them and their heirs." It is to be observed that the testator has used language nearly identical to provide for the distribution of the trust fund in three cases, namely, upon the death of his wife without remarrying, upon the remarriage of his wife, and upon the death of his wife having remarried. In a will drawn with some care it is not to be presumed that the testator intended that in the event of the remarriage of his wife one set of persons should receive two thirds of his estate and a different, or possibly different, set of persons should receive the other one third; as would be the case if the clause in controversy were interpreted as meaning children living at the time of distribution, instead of those living at his own decease. *Rotch* v. *Rotch,* 173 Mass. 125.

The mere fact that the trustees are authorized to expend principal for the support of the testator's widow and for the maintenance and education of his children, and that thereby a remainderman's share may be decreased in size, does not establish an intention to postpone the vesting of the remainder until the widow's death. *Bancroft* v. *Fitch,* 164 Mass. 401. *Bryant* v. *Flanders,* 201 Mass. 373. *Boston Safe Deposit & Trust Co.* v. *Nevin,* 212 Mass. 232.

We are of opinion that the case at bar comes within the general rule as laid down in *Gibbens* v. *Gibbens,* 140 Mass. 102, 104, and expressly recognized in *Crapo* v. *Price,* 190 Mass. 317, relied on by the defendant Hannah C. Jackson. In the latter case the limitation over was not made to children of the testatrix or to her relatives by blood or marriage; and the court said (pages 320, 321) that "no help can be derived from the cases which have laid down the rule that a remainder given to the testator's children is to be regarded as vested, even though the court might otherwise have treated it as contingent."

2. In the fourth article of the will of William Haskins, senior, a trust fund of $8,000 was established for the benefit of his widow, Matilda T. The trustees were directed "at and after the decease or marriage of my said wife as the case may be, then to pay over the said principal sum, and all remaining income and in-

terest thereof discharged of all trusts unto my legal heirs, according to the statutes of distribution of this Commonwealth." The widow Matilda T. Haskins died in 1901. The question whether the remainder to the "legal heirs" vested at the death of the testator is determined largely by the same considerations already stated when dealing with the will of William C. Haskins. Without repeating them, we find no language in the will manifesting an intention to postpone the vesting of the remainder until the death of the testator's widow, the life beneficiary under the trust. We are of opinion that, in accordance with the general rule, the remainder vested in William C. Haskins, who was the only child and "legal heir" of the testator, William Haskins, senior, under the laws then in force; and that upon the death of William C. in 1892, that remainder became part of his estate. *Holmes* v. *Holmes,* 194 Mass. 552. *Jewett* v. *Jewett,* 200 Mass. 310. *Gray* v. *Whittemore,* 192 Mass. 367, 380. See Gen. Sts. c. 90, §§ 1, 15, 16, 18.

3. At the death of the testator William C. Haskins he was seised and possessed of certain parcels of real estate. All these lands have been sold in accordance with the power given by the will and the proceeds invested and treated as a part of the trust fund. Nowhere in the will is there an express direction that the real estate shall be sold and turned into money. It simply gives the trustees power and authority to sell and convey, and to make new investments and exchange of securities. Notwithstanding the arguments based on the character of the property, and on the force of isolated expressions in the will referring to investments in "interest and dividend paying securities" and payments out of the "principal trust fund," a clear intention to convert cannot be implied from the language or general scope of the will. Accordingly the general rule must be followed, and the proceeds of the real estate sold by the trustees must be treated as realty until the fund resulting from a sale reaches the hands of one who is entitled to treat it as his own absolutely and for all purposes. *Gray* v. *Whittemore,* 192 Mass. 367, 384, and cases cited. *O'Brien* v. *Lewis,* 208 Mass. 515.

As the defendant Hannah C. Jackson has outlived the widow of the testator William C. Haskins, presumably this is immaterial to her, as she is entitled to take the share which vested in her on

her father's death, whether it consisted of real or personal estate. The one third share of the daughter Alice B. Haskins, later Alice B. Crombie, in the real estate situate in Massachusetts, since the death of her child Barbara is held by the surviving husband and father, Arthur C. Crombie, under the statutes then in force. As already stated, William Haskins, son of the testator William C. Haskins, died intestate in 1899, leaving a widow (now Mabel H. Huefner, one of the defendants) who is administratrix of his estate, and, as next of kin, his mother, Maria E. Haskins. While his administratrix succeeded to his rights in the personal property, his heirs at law succeeded to his rights in the real estate; and his undivided one third interest in the Massachusetts realty passed to his mother under Pub. Sts. c. 125, § 1, then in force. As his only interest therein was a vested remainder in property held in trust, his widow had no common law dower therein; *Seaman* v. *Harmon,* 192 Mass. 5; and did not take as statutory heir under Pub. Sts. c. 124, § 3. *Watson* v. *Watson,* 150 Mass. 84.

The proceeds of the undivided interest in the land owned by the testator William C. Haskins in Anne Arundel County, Maryland, must be distributed in accordance with the statute law of that State, as set forth in the record. According to the law in force at the death of William Haskins (1899), it appears that his widow, now Mabel H. Huefner, was entitled to dower in lands held by equitable as well as legal title in her husband; and she is entitled to an interest in the proceeds of her husband's one third share equivalent to her dower rights. Subject to this dower interest, the share of William Haskins in the Maryland realty passed to his two sisters Hannah C. Jackson and Alice B. Crombie, in equal shares. After the death of Alice B. Crombie her interest in the Maryland realty presumably went to Arthur C. Crombie, either as her husband or as the sole heir of their daughter Barbara.

The tracing of the proceeds of real estate into the present investments is a practical question with which we need not deal at this time. The shares of personal property belonging to the estates of William Haskins and Alice B. Crombie will be paid of course to their respective administrators.

The plaintiffs are to be instructed to distribute the estate in their hands in accordance with this opinion.

*Decree accordingly.*