RUTH IONA SORRELLS, AND HER HUSBAND CHARLES SORRELLS, *Appellants*, v. WALTER MCNALLY, PERSONALLY AND AS EXECUTOR AND TRUSTEE OF AND UNDER THE LAST WILL AND TESTAMENT OF JOHN B. FLINN, SENIOR, DECEASED, *Appellee*.

En Banc.

Opinion Filed May 30, 1925.

1. Under the law of this State where there is but one child surviving the widow's dower is one half the entire estate.

2. To ascertain and give effect to the intent of the testator is the cardinal rule of testamentary construction. We have found no exceptions to this rule except where the testator attempts to dispose of his property contrary to some rule of law or public policy.

3 . The intention of the testator is to be gathered from a consideration of all the provisions of the will taken together, rather than from detached portions or any particular form of words. This rule prevails whether the entire will or some specific clause or part of it is being construed.

4. We understand the rule to be that regardless of how ample the terms of the devise to a trustee, he takes only an estate commensurate with the powers conferred and the purposes intended to be accomplished by him. It may be a dry passive trust or mere resting place for the legal title, or it may be an active continuing trust with power to sell and manage the estate equivalent to a fee simple absolute.

5. A reversion is defined as the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him. It is also described as the returning of land to the grantor, or his heirs, after the grant is over.

6. A possibility of Reverter is created by the conveyance of a limited fee, and while in some respects it is similar to a reversion, in others it is quite different. It is not an estate, but the mere possibility of having an estate at some future time.

7. A resulting or involuntary trust is one that is independent of any contract and arises by implication of law on a particular state of facts, as when one man's money has been invested in property and the deed taken in the name of another. It is sometimes defined as one which arises when the legal estate in property is disposed of, conveyed or transferred, but the intent appears or is inferred from the terms of the disposition or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title.

8. A resulting trust is a creature of equity and never arises where the parties have made a declaration of trust in writing. Intention is an essential element and is presumed in law from the facts and circumstances accompanying the transaction and payment of the consideration for the whole or a definite part of the property sought to be impressed with the trust.

9. A lapsed legacy or devise is one which never vests because of (1) the death of the legatee before the testator, or (2) if the legatee survive the testator he dies before his interest vests under the will. Most lapses fall, in the first class, but in

either instance the intention of the testator determines the question of lapse.

10. The law favors the early vesting of estates, and in the absence of a clear manifestation of the intention of the testator to the contrary, estates are held to vest at the earliest possible date.

11. All doubt as to whether a legacy is vested or contingent is resolved if possible in favor of vesting if this can be done by a fair and reasonable construction of the whole will and no estate will be held to be contingent unless very decided terms are used in the will or it is necessary to so hold in order to carry out the other provisions or implications of the will. The overwhelming weight of authority is to the effect that devises vest at the death of the testator unless there is a clear intent to postpone the vesting.

12. The presumption that a legacy was intended to be vested applies with far greater force where a testator is making provision for a child or a grand-child than where the gift is to a stranger or to a collateral relative.

13. The rule seems to be well settled that where there is a devise to an individual or a class upon attaining a certain age, such devise is *prima* facie contingent; but when the devise carries to the same individual or class, the income from the estate to accrue in the meantime, it will be construed as conferring a vested interest.

14. "If it appears that a future gift is postponed in order to let in some other interest, or as it is sometimes expressed, 'for the benefit of the estate,' the gift is vested notwithstanding, although the enjoyment is postponed, the presumption being that the testator postponed the distribution or payment for the purposes of the prior bequest and not to prevent the ulterior legacy from vesting."

15. "Estates in remainder vest at the earliest period possible unless a contrary intention on the part of the testator is clearly shown. When it is a remainder after a life estate it is regarded as a vested remainder and the possession only is postponed.

16. Election on the part of the widow to take against the will of her deceased husband is equivalent to her death as to payment of legacies and distribution under the will on the happening of that event.

17. Under the common law title to property could not be suspended, but must be vested in some one. Such vestiture or right of vestiture may be cut off or defeated, but we are aware of no authority for holding it as suspended, and the will in this case evinces no such purpose on the part of the testator.

18. The right to take real or personal property by inheritance is purely statutory, and a husband is presumed to know that his widow's statutory rights in his estate are paramount to his will.

An Appeal from the Circuit Court for Putnam County; A. V. Long, Judge.

Decree reversed.

*Thos B. Dowda, J. J. Canon* and *Hilburn & Merryday,* for Appellants;

*A. H. Odom* and *Charles P.* and *J. J. G. Cooper,* for Appellee.

Terrell, J.

John B. Flinn, Senior, died testate, November 23, 1919. Surviving him were his wife, Zeolide W. Flinn, his son, John B. Flinn, Junior, and his grand-son Charles Otto Flinn, besides numerous collateral relatives. Omitting the formal parts and provisions for certain legacies, the will of John B. Flinn, Senior, is as follows:

"All of the rest of my property both real, personal or mixed, I give, devise and bequeath to my executor, Walter

McNally, with full power to manage and handle same, to sell and dispose of any of it at public or private sale without Court Order and to make and execute deeds for same, and upon such terms and in such manner as to him shall seem meet.

Also he shall have full power to compromise and satisfy any debts due to my estate, and also any liabilities to which my estate may be subject and also full power to reinvest all surplus funds on hand from time to time as fully and in as ample a manner as I might do if living.

"And out of the net proceeds of my estate shall deduct his commissions for services, same to be allowed him by the Court and shall pay to my wife Zeolide W. Flinn during her life time One Hundred Dollars per month or more should she at any time require it, for her support and for the support of my grandson Charles Otto Flinn, who was given to us by his father John B. Flinn Jr. to raise and support.

"And to my son John B. Flinn, Jr., my executor shall pay out of the income of my estate Twenty Dollars each month only, and should he at any time attempt to interfere with my wife's control of said child Charles Otto Flinn, then this allowance of Twenty Dollars ($20.00) shall be discontinued.

"Should my wife remarry then the above allowance to her shall entirely cease.

"Upon the remarriage or death of my wife one-half of the net income of my estate shall be paid to my son John B. Flinn, Jr., instead of the Twenty Dollars per month before allowed, during his natural life and out of the revenue remaining my said grandson shall be provided for until of legal age, from which period he shall be paid the full net income of said one-half of my estate and at the death of my son John B. Flinn, Jr. all of the net income of my estate

shall be paid to my said grandson semi-annually and all of my said estate shall be turned over to him when he shall have attained his thirtieth year.

"I hereby nominate and appoint Walter McNally executor of this my last will and testament."

On May 3, 1920, Mrs. Zeolide W. Flinn renounced the provisions of the Will for her benefit and elected to take a child's part, which under our law, there being but one child surviving, was one-half the entire estate. There is no contention as to this half.

John B. Flinn Jr. died October 30, 1922, leaving surviving him his son, Charles Otto Flinn, who died November 9, 1922; and was survived by his mother, Ruth Iona Sorrels (nee Flinn) who is still living and is one of the appellants here.

Subsequent to the death of John B. Flinn Jr. and Charles Otto Flinn, Walter McNally as executor and trustee brought this suit for the purpose of having the Will construed. Appellants and all known relatives interested in the distribution of the estate were made parties defendant in the court below. On final hearing the Chancellor made his decree holding Mrs. Zeolide W. Flinn to be entitled to the entire estate. No appeal was taken from the decree of the Chancellor except on the part of Ruth Iona Sorrels and her husband Charles E. Sorrels.

To ascertain and give effect to the intent of the testator is the cardinal rule of testamentary construction. We have found no exceptions to this rule except where the testator attempts to dispose of his property contrary to some rule of law or public policy. The intention of the testator is to be gathered from a consideration of all the provisions of the will taken together, rather than from detached portions or any particular form of words. This rule prevails whether the entire will or some specific clause or part of it

is being construed. Dean v. Crews, 77 Fla. 319, 81 South. Rep. 479; 28 R. C. L. 211 and cases cited.

It is contended by appellee that under the terms of the will the fee to the estate of John B. Flinn, Sr. was vested in Walter McNally as trustee, that no estate of inheritance was vested in Charles Otto Flinn, the residuary legatee at the time of his death, that the provisions of the will for Charles Otto Flinn were contingent and never vested in him, but at his death lapsed and reverted to or constituted a resulting trust in favor of the heirs or next of kin of John B. Flinn, Sr.

As to the title and estate taken by the trustee we understand the rule to be that regardless of how ample the terms of the devise to him, he takes only an estate commensurate with the powers conferred and the purposes intended to be accomplished by him. It may be a dry passive trust or mere resting place for the legal title, or it may be an active continuing trust with power to sell and manage the estate equivalent to a fee simple absolute. Carney v. Kain, 40 W. Va. 758, 23 S. E. Rep. 650; Blount v. Walker, 31 S. C. 13, 9 S. E. Rep. 804.

A reversion is defined as the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him. It is also described as the returning of land to the grantor, or his heirs, after the grant is over. It thus has two significations: one is an estate left which continues during a particular estate in being, and the other is the returning of the land after the particular estate is ended. Powell v. Dayton, S. & G. R. R. Co., 16 Ore. 33, 16 Pac. Rep. 863, 8 Am. St. Rep. 251.

A possibility of reverter is created by the conveyance of a limited fee, and while in some respects it is similar to a reversion, in others it is quite different. It is not an estate,

but the mere possibility of having an estate at some future time. Such possibilities are usually classed under two heads, as follows: (1) The possibility that a common law fee may return to the grantor by a breach of a condition subject to which it was granted, and (2) the possibility that a common law fee other than a fee simple may revert to the grantor by the natural determination of the fee. North v. Graham, 235 Ill. 178, 85 N. E. Rep. 267, 18 L. R. A. (N. S.) 624; 23 R. C. L. 1101.

A resulting or involuntary trust is one that is independent of any contract and arises by implication of law on a particular state of facts, as when one man's money has been invested in property and the deed taken in the name of another. It is sometimes defined as one which arises when the legal estate in property is disposed of, conveyed or transferred, but the intent appears or is inferred from the terms of the disposition or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title. 26 R. C. L. 1214.

A resulting trust is a creature of equity and never arises where the parties have made a declaration of trust in writing. Intention is an essential element and is presumed in law from the facts and circumstances accompanying the transaction and payment of the consideration for the whole or a definite part of the property sought to be impressed with the trust. Robinson v. Pierce, 118 Ala. 273, 24 South. Rep. 984, 45 L. R. A. 66; Farmers' & Traders' Bank v. Kimball Milling Co., 1 S. D. 388, 47 N. W. Rep. 402.

A lapse legacy or devise is one which never vests because of (1) the death of the legatee before the testator, or (2) if the legatee survive the testator he dies before his interest vests under the will. Most lapses fall in the first class, but in either instance the intention of the testator determines the question of lapse. The test being whether under the

terms of the will the legacy or devise vests on the testator's death or is contingent on the beneficiary's being alive at the time of payment. If the time of enjoyment or payment is postponed, the legacy or devise becomes vested absolutely at the testator's death and the death of the beneficiary before it becomes payable does not cause the legacy or devise to lapse. 4 Schouler on Wills, Executors & Adm'r (6th ed.) 2664; 28 R. C. L. 336.

As against the contention of appellee, it is contended by appellants that under the provisions of the will the portion of the estate involved in this case reverted to John B. Flinn, Jr., and on his death descended to his son Charles Otto Flinn, on whose death it vested in his mother, Ruth Iona Sorrels, his only heir, pursuant to our statute of descents, or that Charles Otto Flinn was vested with one-half interest in the entire estate which descended to and became the property of said Ruth Iona Sorrels, his only heir at law.

Inspection of the will discloses no doubt or ambiguity as to the purpose of the testator. It makes ample provision for the wife for her life, provides twenty dollars per month for John B. Flinn, Jr., provided he does not interfere with the control of Charles Otto Flinn on the part of the wife, in which event said allowance is discontinued, and in the event of death or remarriage of the wife, John B. Flinn, Jr., shall have one-half the net income of the estate for life instead of the former allowance of twenty dollars per month, and Charles Otto Flinn in such event shall be provided for from the other half till of legal age when he shall be paid all the net income of said half, and from the death of John B. Flinn, Jr., shall be paid the full net income of the estate semi-annually. The concluding clause of the will is as follows: "And all my said estate shall be turned over. to him (Charles Otto Flinn) when he shall have attained his thirtieth year."

The recipients of the bounty of the testator were, in other words, his wife Zeolide W. Flinn, his son John B. Flinn Jr. and his grandson Charles Otto Flinn.  He assumed that the provisions of the will would be accepted by the wife, that in the regular course of nature she would die first, when a life estate was provided for the son who would next decease, and at his death the entire estate be turned over to the grandson.  He apparently took no thought that his assumption or the regular course of nature would be reversed which was done in the election of the wife to take a child's part instead of accepting the provisions of the will and in the death of the son and grandson prior to the death of the wife, so the will carried no alternative provision to cover such contingency  Both the will and the record disclose that John B Flinn Sr. had unbounded faith and confidence in the fidelity and business integrity of Walter McNally, his trustee, and in his common sense and practical capacity to control and manage wisely the estate in the interest of his beneficiaries.  That the trustee might have a free hand in handling the estate, the will for all purposes commensurate with its execution carried to him a fee simple absolute in fact and name in and to all the estate covered thereby.  On the whole we think the language of the testator is plain and his meaning clear, and we find nothing evincing a possibility of reverter or a resulting trust.

The primary question then for our determination is, when, if at all, did the devise to Charles Otto Flinn vest? and if it vested at the death of the testator, was it divested by reason of his death before thirty years of age?  The law favors the early vesting of estates, and in the absence of a clear manifestation of the intention of the testator to the contrary, estates are held to vest at the earliest possible date.  Kalbach v. Clark, 133 Iowa 215, 110 N. W. Rep. 599,

12 Ann. Cas. 647, 12 L. R. A. (N. S.) 801; Ellicott v. Ellicott, 90 Md. 321, 45 Atl. Rep. 183; Lumpkin v. Lumpkin, 108 Md. 470, 70 Atl. Rep. 238; Bruce v. Bissell, 119 Ind. 525, 22 N. E. Rep. 4; Commonwealth v. Wellford, 114 Va. 372, 76 S. E. Rep. 917, 44 L. R. A. (N. S.) 419.

All doubt as to whether a legacy is vested or contingent is resolved if possible in favor of vesting if this can be done by a fair and reasonable construction of the whole will and no estate will be held to be contingent unless very decided terms are used in the will or it is necessary to so hold in order to carry out the other provisions or implications of the will. The overwhelming weight of authority is to the effect that devises vest at the death of the testator unless there is a clear intent to postpone the vesting. 4 Schouler on Wills, Executors and Adm'r (6th ed.) 2562; Meek v. Fox, 118 Va. 774, 88 S. E. Rep. 161, L. R. A. 1916 D 1194; Chess' Appeal, 87 Pa. St. 362, 30 Am. Rep. 361; The presumption that a legacy was intended to be vested applies with far greater force where a testator is making provision for a child or a grandchild than where the gift is to a stranger or to a collateral relative. Atchison v. Francis, 182 Iowa 37, 165 N. W. Rep. 587, L. R. A. 1918 E 1087; Wengerd's Estate, 143 Pa. St. 615, 22 Atl. Rep. 869, 13 L. R. 360.

The rule seems to be well settled that where there is a devise to an individual or a class upon attaining a certain age, such devise is *prima facie* contingent; but when the devise carries to the same individual or class, the income from the estate to accrue in the meantime, it will be construed as conferring a vested interest. In other words, the strongest argument against contingency and in support of the early vestiture of devises, no contrary intent being shown, is the fact of the provision for enjoyment of the income by the legatee prior to coming in possession of the

inheritance.    Cropley v. Cooper, 19 Wall. (U. S.) 167;
Provenchere's Appeal, 67 Pa. St. 463; Reed's Appeal, 118
Pa. St. 215, 11 Atl. Rep. 787; Jones v. Mackil, 1 Russ. Ch.
220, 25 Revised Rep. 32; Dale v. White, 33 Conn. 294; In
re Blake's Estate, 157 Cal. 448, 108 Pac. Rep. 287; Mc-
Leod v. McDonnel, 6 Ala. 236; Hersey v. Purington, 96
Me. 166, 51 Atl. Rep. 865; Gifford v. Thorn, 9 N. J. Eq.
702; Smith v. Edwards, 88 N. Y. 92; Tucker v. Bishop, 16
N. Y. 402; Cammann v. Bailey, 210 N. Y. 19, 103 N. E.
Rep. 824; Kelly v. Dike, 8 R. I. 436; Sellers v. Reed, 88
Va. 377, 13 S. E. Rep. 754; Perry v. Rhodes, 6 N. C. (2
Murphey) 140; Note to Shackley v. Homer, L. R. A.
1915C 993, where many cases are cited on this point.

By the terms of the will the testator in this case had no
thought of any one as recipients of his bounty but his wife,
his son and his grand-son; he provided at best a life estate
for the wife and son, made ample provision for the grand-
son till he should attain the age of thirty, and then provided
that the entire estate should be turned over to him.    There
is no devise over to any one, nor can we gather any impres-
sion from the whole text of the instrument or any part of
it that the testator had any other idea than that Charles
Otto Flinn would survive his thirtieth year and take over
the estate.    The will anticipated the death of the wife and
son and made provision for such contingency, but no
thought seems to have been taken for the death of the
grand-son prior to his taking over the estate.

The language of the concluding clause of the will when
construed with other provisions is strongly persuasive that
the testator intended for the remainder of his estate to
vest at his death in Charles Otto Flinn, his grand-son; this
clause is as follows: "All of my said estate shall be turned
over to him *when* he shall have attained his thirtieth year."
From the whole context of the will the use of the word

"when" as here used indicates only the time when the enjoyment of the devise is to commence, and when so used it is held to be vested. Sims v. Smith, 59 N. C. (6 Jones Eq.) 347; Fisher v. Johnson, 38 N. J. Eq. 46; Hooker v. Bryan, 140 N. C. 402, 53 S. E. Rep. 130; Fuller v. Fuller, 58 N. C. (5 Jones Eq.) 223.

In view of the fact that the whole scope of the will reveals no thought on the part of the testator of any one other than his wife, his son and his grandson, and a life estate with contingency in the event of death was provided for the wife and son, and liberal provision was made from the estate for the grandson till he reached the age of thirty. when he took the whole estate, and no devise over or other contingency being provided in the event of his death, it would seem a strong indication at least that the testator intended the corpus of his estate to vest at his death in his grand-son.

From a review of many cases on every phase of the question of vestiture or remainders and inheritances in the Note to Shackley v. Homer, L. R. A. 1915C 993, the annotator adduces the following general rule: "If it appears that a future gift is postponed in order to let in some other interest, or as it is sometimes expressed, 'for the benefit of the estate,' the gift is vested notwithstanding, although the enjoyment is postponed, the presumption being that the testator postponed the distribution or payment for the purposes of prior bequest and not to prevent the ulterior legacy from vesting." Moulton v. Chapman, 108 Me. 417, 81 Atl. Rep. 1007; Cropley v. Cooper, 19 Wall. (U. S.) 167; Cogburn v. Ogleby, 18 Ga. 56; Hocker v. Gentry, 3 Met. (Ky.) 463; Post v. Herbert, 27 N. J. Eq. 540; Scofield v. Olcott, 120 Ill. 362, 11 N. E. Rep. 351; Hoover v. Smith, 96 Md. 393, 54 Atl. Rep. 102; Cushman v. Arnold, 185 Mass. 165, 70 N. E. Rep. 43; Robert v. Corning, 89 N. Y.

225; Atchinson v. Francis, 182 Iowa 37, 165 N. W. Rep. 587, L. R. A. 1918E 1087.

In Scofield v. Olcott, 120 Ill. 362, text 374, 11 N. E. Rep. 351, the court in applying the rule says: ''Estates in remainder vest at the earliest period possible unless a contrary intention on the part of the testator is clearly shown. When it is a remainder after a life estate it is regarded as a vested remainder and the possession only is postponed.

In Martin v. Cook, 129 Md. 195, 98 Atl. Rep. 489, the Maryland court refuses to apply the rule which postpones the vesting of a remainder to a case where there were no words of gift except in the direction to divide after the death of the life tenant, and states the applicable rule to be that ''if the postponement of the payment is for the purpose of letting in an intermediate estate, then the interest shall be vested at the death of the testator. Herber v. Post, 26 N. J. Eq. 278, text 281; Post v. Herbert, 27 N. J. Eq. 540.

In Whitman v. Huefner, 221 Mass. 265, 108 N. E. Rep. 1054, it was held to be a well established rule that where a man devises a life estate to his widow with remainder after to his children, the inference that he intended a vested right to the children is much stronger than when the remainder is created for the benefit of persons having no natural claims on his bounty. Morse v. Ballou, 109 Me. 264, 83 Atl. Rep. 799; Atchison v. Francis, 182 Iowa, 37, 165 N. W. Rep. 587, L. R. A. 1918 E 1087; Stevens v. Carroll, 64 Ore. 417, 129 Pac. Rep. 1044, L. R. A. 1918E 1095.

The fact that the testator failed to provide for a gift over in the event that Charles Otto Flinn did not reach his thirtieth year is taken as indicating that he (the testator) considered the gift as vesting immediately rather than as imposing a contingency. Ordway v. Dow, 55 N. H. 11; Matter of Lincoln Trust Co., 78 Misc. Rep. 325, 139 N. Y. Supp.

682; Note to Shackley v. Homer, *supra,* where an exhaustive treatment of every phase of the subject of vestiture is found.

Walter McNally, the trustee named in the will under consideration, had long been connected in business with the testator, had contributed largely to the accumulation of the estate and knew the method of the testator in managing the affairs of the estate as no other person knew it. John B. Flinn, Jr., though a mature man, had shown little or no business capacity, and Charles Otto Flinn, the pride of his grandfather's heart, was a child about ten years old at the time of the execution of the will. In the light of these facts with Walter McNally as trustee to manage the estate in the interim, it is perfectly logical to conclude that it was for the benefit of the estate that the full enjoyment of it by Charles Otto Flinn be postponed that he might reach man's estate with judgment and discretion mature and thereby be better enabled to handle it wisely to effect the purpose of the trust. In view of the law and the state of the will it must have been the purpose of the testator that his residuary estate vest in Charles Otto Flinn at his (testator's) death.

It does not appear that the question of acceleration as contended by appellee would change the matter of vestiture in this case. This doctrine is one of interpretation and like all other rules for the interpretation of wills yields to the intent of the testator, and if it is clear that the testator intended no such result, there will be no acceleration or shortening of the time for vestiture in fact by our holding in this case the question of acceleration is not material. Scotten v. Moore, 5 Boyce (28 Del.) 545, 93 Atl. Rep. 373, Ann. Cas. 1918C 409, and Note; Cotton v. Fletcher, 77 N. H. 216, 90 Atl. Rep. 510, Ann. Cas. 1915A 1225. Election on the part of the widow to take against the will of her

deceased husband is equivalent to her death as to payment of legacies and distribution under the will on the happening of that event. Vance's Estate, 141 Pa. St. 201, 21 Atl. Rep. 643, 12 L. R. A. 227.

In this case John B. Flinn, Jr., forfeited the twenty dollars per month provision of the will for his benefit by interfering with the control of the grandson, Charles Otto Flinn, by the widow, so when she exercised her election there was nothing left but the remainder, equivalent to one-half of the estate and that was in the hands of the trustee to be turned over to Charles Otto when he attained his thirtieth year. It is also proper to state that on the widow's election that part of the will providing for John B. Flinn, Jr., in the event of the death or remarriage of the widow becomes of no effect, and having forfeited the only other provision for him, there is nothing remaining for his benefit and consequently nothing to accelerate in his interest.

We have read carefully Carney v. Kain, 40 W. Va. 758, 23 S. E. Rep. 650, and Blount v. Walker, 31 S. C. 13, 9 S. E. Rep. 804, supporting appellee's contention to the effect that the soundest solution of the question here involved is to regard the title to the property in question as having been suspended invested with a possibility of reverter to the heirs of the testator living at the time of reversion. The facts in these cases are entirely different from those in the case at bar, and they are not therefore controlling. Under the common law title to property could not be suspended, but must be vested in some one. Such vestiture or right of vestiture may be cut off or defeated, but we are aware of no authority for holding it as suspended, and the will in this case evinces no such purpose on the part of the testator.

If we concede for the sake of argument that the part of the devise here questioned lapsed, or for any other reason

reverted to the parent estate when the widow elected against the provisions of the will, such lapse or reversion would then be subject to distribution under our statute of descents (Sec. 3619 R. G. S.) and a like result to the foregoing is reached. Almy v. Jones, 17 R. I. 265, 21 Atl. Rep. 616, 12 L. R. A. 414; Clark v. Mack, 161 Mich. 545, 126 N. W. Rep. 632; Mills v. Newberry, 112 Ill. 123, 1 N. E. Rep. 156; Tea v. Millen, 257 Ill. 624, 101 N. E. Rep. 209, 45 L. R. A. (N. S.) 1163.

Holding that in either event Charles Otto Flinn was at the time of his death vested with an estate of inheritance in and to one-half the residuary estate of John B. Flinn, Sr., and there being no provision or direction in the will of the said J. B. Flinn, Sr., as to the disposition thereof in the event of the death of Charles Otto Flinn before attaining his thirtieth year, and no other impediment to or interruption of the statute of descents being made to appear, the conclusion is irresistible that the estate in question must be treated and disposed of as an intestate estate.

The right to take real or personal property by inheritance is purely statutory, and a husband is presumed to know that his widow's statutory rights in his estate are paramount to his will. Our statute of descents has departed materially from its source of origin, the English statute on the same subject, but with us as with all our sister States these statutes are declared to be grounded on principles of justice and equity with the object of making such a will for the intestate as he would probably make, their obvious policy being to follow the lead of the natural affections and to consider as most worthy the claims of those nearest the heart of him who might have been the testator. 9 R. C. L. 12.

The case as made here by appellee appears to be one of those rare instances in which the application of the rule

works harshly and would appeal strongly to a court of equity. The appellant had signed away all right and interest to Charles Otto Flinn, had been divorced from his father, married to another and in right and good conscience had no claims whatever on the testator's bounty; yet with all that she was the mother of his beneficiary and this being a pure question of law, the statute of descents carries the estate of inheritance vested in Charles Otto Flinn to her.

The decree of the Chancellor finding the remainder of the residuary estate of John B. Flinn, Sr., to be vested in Zeolide W. Flinn is therefore reversed with directions to tax the cost of this litigation against the appellants.

WEST, C. J. AND WHITFIELD, BROWNE AND STRUM, J. J., concur,

ELLIS, J., concurs in conclusion.