NICHOLAS BURNS, et al., *Appellants,* v. POLK COUNTY NATIONAL BANK, a Corporation, et al., *Appellees.*

En Banc.

Opinion filed March 13, 1930.

Petition for rehearing denied May 20, 1930.

*Huffaker & Edwards* and *J. R. Clements,* for Appellants;

*Wilson & Boswell* and *Johnson, Bosarge & Allen,* for Appellees.

PER CURIAM.—In this cause Mr. Chief Justice TERRELL, Mr. Justice ELLIS and Mr. Justice STRUM are of the opinion that the order appealed from should be affirmed, while Mr. Justice WHITFIELD, Mr. Justice BROWN and Mr. Justice BUFORD are of the opinion that the said order should be reversed. When it appears that the members of the Court are permanently and equally divided in.

opinion as to whether an order should be affirmed or re-versed, and there is no prospect of an immediate change in the personnel of the Court, the order should be affirmed. Therefore, it is considered, ordered and decreed that the order of the circuit court in this cause be and the same is hereby affirmed on the authority of State ex rel. Hampton v. McClung, 47 Fla. 224, 37 So. R. 51.

TERRELL, C. J., AND WHITFIELD, ELLIS, STRUM, BROWN AND BUFORD, J. J., concur.

BUFORD, J.—The appellees filed a bill of complaint in the circuit court to set aside and cancel a contract of sale of certain property which contract was made by Nicholas Burns, H. C. Dwiggins and T. S. Trantham, as trustees, under the will of Edwin Spencer, Jr., of the one part and Burns Development Company of the other part.

Demurrer was filed to the bill of complaint and sus-tained. An amended bill of complaint was filed to which demurrer was interposed and overruled. From the order overruling the demurrer appeal was taken.

Edwin Spencer died testate. Four pertinent paragraphs of his will appeared in the following language:

"I bequeath to Reid Robson and Harry C. Dwiggins, all of my real property in Marion County, Florida, consisting of approximately 3,000 acres of land, in trust, however, for my beloved wife and two children, Edwin III, and Cathrine, and direct that they have full management and control as trustees of said property with full power to manage, sell or dispose of same upon such terms as they may see fit, and with full power to encumber same, but without the right to borrow money in any way so as to be a claim against any of the remainder of my estate. Such money

as may be derived from the sale or otherwise of said property, after expense of administration is paid, I direct shall be paid one-third to my wife and the remaining two-thirds I direct shall be deposited in some trust company by the trustees at the usual rate of interest, which interest shall be paid to my wife, to aid in the upbringing of the children, the principal to remain intact, until the said children become 25 years of age, when it shall be paid to them.

"My half interest in what is known as Duson (Deeson?) Island, I will to. Harry C. Dwiggins and Kate C. Spencer, my wife, in trust nevertheless for the use and benefit of my wife and my two children, Edwin and Cathrine. I direct the same disposition of this property as of my Marion County property, and give the trustees the same full and 'plurary' powers of sale, and disposition of funds, and direct that said funds shall be disposed of in the same manner as above set out for Marion County funds.

"I own half of the stock of the Spencer-Futch Company, and I owe L. M. or F. G. Futch $2,000.00. I direct that my wife pay the said Futch the said $2,000.00 from such insurance money as she shall receive, to-wit, $15,000.00, which insurance money shall belong to her. I also direct or urge that she loan the Spencer-Futch Company sufficient money (about $8,000.00) taking therefor a long time second mortgage on property at 8%. If my wife complies with this request, I will until her one-half of my said stock, to-wit, $25,000.00, of said stock in her own name. The remainder of said stock I will to Harry C. Dwiggins and Kate C. Spencer as joint trustees with all power to vote the said stock at any called, special or regular meeting, said voting power to be joint. It is my desire

that the said Harry C. Dwiggins should be elected president of said corporation and countersign all checks and aid and assist Futch in attending to affairs of said corporation. The said persons are hereby made trustees for my two children and I direct all dividends from the said stock shall be applied first to the maintenance, care and education of said children by the guardian thereof hereinafter named, and the remainder if any deposited by the trustees to be turned over to them as each becomes 25 years of age.

"I own half interest in Burns Development Company. I will my stock in said company to Harry C. Dwiggins and G. S. Trantham, in trust for my wife and two children, with full power to vote the said stock. It is my desire that after the completion of the sale of Lake Wood Park and Golf side that the corporation be discontinued. I direct my said trustees to fully protect my interests. I am entitled to credit of $2,300.00 on books of the company. I direct that as any money or income is received by said trustees that it be divided one-third to my wife and the remainder be deposited in some Trust Company and the income paid to Guardian for care of children, principal to be given to them as each becomes twenty-five. Of course, if the income from the sources above named are not sufficient to care for my children the Trustees may in their discretion allow Guardian a larger amount, even of the principal."

The particular paragraph of the will, the construction of which is here involved is the fourth paragraph above quoted.

It is the contention of the complainants in the court below, the appellees here, that under the terms of this para-

graph of the will the Trustees were not authorized to sell the trust property, that is the one-half interest in Burns Development Company, which was represented by fifty per cent of the capital stock of that company.

It is the contention of the appellants, the defendant in the court below, that a proper construction of the will authorized the named trustees to make sale of the capital stock of Burns Development Company and apply the proceeds as directed in the will.

The contract of sale is made a part of the bill of complaint. That contract shows on its face that the sale of Lake Wood Park had not been completed at the time of the attempted sale of the trust estate.

The language of the will authorized the trustees to vote the stock in Burns Development Company. It provided further, "It is my desire that after the completion of the sale of Lake Wood Park and Golf Side that the corporation be discontinued." If this paragraph of the will had stopped here and we had been left to construe this provision with other provisions of the will in which sale of the property mentioned in other paragraphs is authorized, we would be constrained to hold that it was the intent of the testator not to authorize the trustees to sell stock in Burns Development Company. There is a pertinent sentence in this paragraph of the will, however, which we think lodged in the trustees very broad discretionary power and authority. That sentence is this, "I direct my said trustees to fully protect my interests." There is no direction as to how this shall be done, and we think that it invested the trustees not only with the power but placed upon them the duty of exercising their judgment and discretion in handling the property disposed of in this paragraph; and we find from the allegations of the Bill including the contract of sale, which is made a part thereof, that Burns

Development Company was indebted in various and sundry amounts to various and sundry persons upon which indebtedness Edwin Spencer, Jr., during his lifetime was liable and as to which indebtedness his estate became liable. That this indebtedness amounted to $27,500.00. Under the contract of sale the estate of Edwin Spencer, Jr., was relieved of these obligations. The estate was also relieved of any other obligations that might exist against the estate by reason of the connection of Edwin Spencer, Jr., with the corporation. Aside from this, other valuable consideration passed to the trustees in this transaction. It is not alleged in the Bill of Complaint that the trustees did not fully protect the interest of the estate of the testator in this transaction. Neither is it alleged that it was not needful or expedient or in the exercise of sound business discretion wise to protect the interest of the decedent by entering into the sales contract complained of. Neither fraud, waste nor double dealing is charged against the trustees in connection with the matter. We think that the rights and authority of the trustees in regard to the transaction complained of is found in that language above quoted, ''I direct my said trustees to fully protect my interests,'' to make and enter into the contract, which is the subject of this litigation.

In Sorrels v. McNally, 89 Fla. 457, 105 So. R. 106, this Court speaking through Mr. Justice TERRELL, say:

''To ascertain and give effect to the intent of the testator is the cardinal rule of testamentary construction. We have found no exceptions to this rule except where the testator attempts to dispose of his property contrary to some rule of law or public policy. The intention of the testator is to be gathered from a consideration of all the provisions of the will taken to-

gether, rather than from detached portions or any particular form of words.

"This rule prevails whether the entire will or some specific clause or part of it, is being construed. Dean v. Crews, 77 Fla. 319, 81 So. R. 479, 28 R. C. L. 211, and cases cited."

We apply the rule above stated to the instant case.

It may appear to the casual reader that we have departed from this rule in giving emphasis to a few words contained in the paragraph of the will under consideration; but this is not the case.

In the first paragraph of the will, as quoted herein, the trustees named are specifically authorized to sell and dispose of that part of the estate therein dealt with.

The same condition applies to the property referred to in the second paragraph quoted.

In the third paragraph there is no authorization in the trustees to sell the stock referred to in that paragraph, nor is any discretion lodged in the trustees as to the disposition to be made of that property.

So we come to the fourth paragraph which deals with the testator's interest in Burns Development Company. In this we find no specific authorization to sell the capital stock owned by the testator in that company, but in dictating this paragraph he went further and directed in effect that his trustees should do with that property whatever might appear to them to be to the best interest to his estate. That such was clearly the intent we gather from all the provisions of the will taken together.

We think that the demurrer to the amended bill·of complaint should have been sustained and, therefore, the order appealed from should be reversed.

WHITFIELD AND BROWN, J. J., concur.

STRUM, J.—From the provisions of the will here involved, I can not discern an intention on the part of the testator that his Trustees should have authority to sell the testator's stock in Burns Development Company. It seems to me that the authority of the Trustees as to this stock, and particularly the method of the ultimate discharge of the trust with reference thereto, is clearly expressed in the will, no resort to rules of construction being necessary.

In one paragraph of the will, the testator devises to Robson and Dwiggins all of his real property in Marion county, in trust, however, for the testator's wife and two children.

In another paragraph the testator devises his interest in Duson (Deeson?) Island to Dwiggins and Kate C. Spencer, in trust for the benefit of the testator's wife and children.

It will be noticed that the subject matter of these two trusts is land. As to these two trusts the testator confers upon his trustees "full management and control as trustees of said property with full power to manage, sell or dispose of same upon such terms as they may see fit, and with full power to encumber same, * * * ''. With reference to the trusts in this real property, the testator further directs that "such money as may be derived from the sale or otherwise of said property, after expense of administration is paid, I direct shall be paid one-third to my wife and the remaining two-thirds I direct shall be deposited in some trust company by the trustees at the usual rate of interest, which interest shall be paid to my wife, to aid in the up-bringing of the children, the principal to remain intact, until the said children become twenty-five years of age, when it shall be paid to them." The significance of the latter provision with reference to "the principal" which shall remain intact, will appear later.

The next paragraph in the will refers to personal prop-

erty, namely, the testator's stock in Spencer-Futch Company, with reference to which, and with reference to the future conduct and management of the affairs of which company, the testator gives detailed directions. This stock is bequeathed to Dwiggins and Kate C. Spencer as joint trustees "with all power to vote said stock at any called, special or regular meeting, said voting power to be joint." It is significant that no power to sell this stock is given the trustees. The testator directs that "all dividends from said stock (in the Spencer-Futch Company) shall be applied, first, to the maintenance, care and education of said children (testator's children) by the guardian thereof hereinafter named, and the remainder, if any, deposited by the trustees to be turned over to them as each becomes twenty-five years of age."

Then follows the paragraph now in litigation, which concerns testator's stock in Burns Development Company. It will be noted that the testator also left certain directions with reference to the future management of this corporation. This stock the testator bequeathed to Dwiggins and Trantham "in trust for my wife and two children, with full power to vote the said stock. It is my desire that after the completion of the sale of Lakewood Park and Golfside (apparently two subdivisions being marketed by Burns Development Company) that the corporation be discontinued. 'I direct my said trustees to fully protect my interests.' I am entitled to credit of $2,300.00 on the books of the company. I direct that as any money or income is received by said trustees that it be divided one-third to my wife and the remainder be deposited in some trust company and the income paid to the guardian for care of children, principal to be given to them as each becomes twenty-five. Of course, if the income from the sources above named are not sufficient to care for my children,

the trustees may in their discretion allow guardian a larger amount, even of the principal.''

To me it is significant that although this testator, when dealing with his lands, expressly and specifically gave his trustees the broadest and most comprehensive of powers, including the specific power to sell, that in the two ensuing paragraphs dealing with stocks in two corporations in each of which the testator owned a half interest, that is, one-half the capital stock, the will contains no specific power of sale. On the contrary, it appears that the testator was leaving directions as to the future management and conduct of the affairs of these corporations after the testator's death, all of which indicates to me that the testator desired his trustees to hold the stock so that the beneficiaries of the trust, namely, his wife and children, would share in the fortunes of the ventures of these corporations, be they good or bad, until the enterprises in which the Burns Development Company was then engaged, were concluded, and apparently indefinitely with reference to the business of the Spencer-Futch Company. As stated, the business of the Burns Development Company was apparently the marketing of at least two real estate subdivisions. This will was executed on February 18, 1924, which date, as the Court knows, was about the threshold of an era of great appreciation in real estate prices from which large profits to sellers would apparently follow. With reference to the Burns Development Company, the testator provided that ''after the completion of the sale of Lakewood Park and Golfside that the corporation be discontinued.'' This particular provision is not consistent, in my opinion, with an intention on the part of the testator that his trustees should have power to sell his stock in that corporation, but indicates to me that the testator intended that this stock should be retained so that the

beneficiaries of the trust might share in what the testator at that time no doubt anticipated would be substantial profits. If this testator intended that his trustees might sell this stock, what interest would the testator have in the ultimate dissolution of the corporation? Immediately following the testator's direction that after the subdivisions were sold out, the corporation should be ''discontinued'' is found in the sentences: ''I direct my said trustees to fully protect my interests. I am entitled to a credit of $2,300.00 on the books of the company.'' This provision added nothing to the force of the will. It is always the duty of a trustee to fully protect the interests of the *cestuis que trustent*. It can not, however, be construed as authority to depart from the intention of the testator. Considering the context in which it is found, the directions to the trustees ''to fully protect the testator's interests'' more appropriately refers to the winding up of the affairs of the corporation, which the testator by the immediately preceding provision of the will directs shall occur at a stated time, and to the immediately following statement by the testator that he is entitled to a credit of $2,300.00 on the books of the company. It seems to me that it is with reference to the winding up of the corporation and securing of the proper credits to the testator, that the trustees are directed to fully protect the testator's interest. In the striking absence of any specific, or clearly implied, authority to sell the stock, I think that the mere direction to the trustees to protect the testator's interest is insufficient as an authority to sell, particularly when the remainder of the paragraph, and the context in which is found the sentence in question, is considered. To hold that the testator's direction to his trustees ''to fully protect his interests'' authorizes the trustees to sell his stock, although there is no specific authority to sell, as was the

case with respect to the testator's real estate. is to place too broad a construction upon that isolated and indefinite sentence in the will.

The testator conferred on his trustees "full power to vote the said stock" and stopped, although those paragraphs of the will referring to his real property showed clearly that the testator had in mind certain of his property with reference to which he desired to clothe the trustees with power to sell. Instead, however, of following the authority to the trustees to vote the stock with a power to sell or dispose of the same, which would have been most appropriate at that place had the testator intended to confer such authority, the testator at that point provides it is my desire "that after the completion of the sale of Lakewood Park and Golfside that the corporation be discontinued," thereby clearly indicating the method by which he desired the trust terminated, that is, that the corporation should be "discontinued" after completing the sale of Lakewood Park and Golfside. This thought and direction to the trustees—that the trustees should fully protect the testator's interest—seems to me to have occurred to the testator in connection with his immediately preceding directions to wind up the affairs of the corporation at a stated time. There being no specific authority to sell, and the testator having indicated the method by which he desired his trustees to ultimately discharge this trust, I regard the direction to the trustees to protect his interests as insufficient, standing alone, upon which to base authority to sell. The fact that developments in the real estate situation subsequent to the testator's death might render the attempted sale by the trustees beneficial to the *cestuis que trustent*, is not *in itself* a sufficient basis for inferring a power of sale. Though the trustees may have acted in the utmost good faith, and to the best

interest of the beneficiaries, the testator's directions must control, otherwise the judgment of the trustees would be substituted for the intention of the testator, which is not permissible unless the testator has clothed the trustees with direction in the matter, and which it seems to me he has not done in this case with reference to the stock in Burns Development Company.

This situation does not seem to me to fall within the cases cited by appellants in which the words "divide," "invest" or "manage" an estate, or like words, have been construed to imply an authority to sell. These cases do not apply because as I read this will there is no direction or authority to "divide" the subject matter of the trust, at least until the corporation is wound up in which event there still would be no necessity for a sale of the stock. Nor is there any direction to "invest" or "manage" the subject matter of the trust, the stock. The trustees merely acquire the legal title in trust and are directed that "as any money or income is received" to divide the same as directed. There their authority ends. Nor does this case fall within those cases cited by appellant in which a plain authority to sell found in one part of a will is construed to apply to property thereafter mentioned in the will. The latter cases do not apply because the general arrangement, context, and theory of this will indicate to me a contrary intention on the part of the testator.

The paragraph under consideration contains the provision, "Of course, if the income from the source above named are not sufficient to care for my children the trustees may in their discretion allow guardian a larger amount, *even of the principal.*" Appellants contend that the word "principal" refers to the stock in the hands of the trustees and that there would be no way to "allow" the beneficiaries any portion of the stock without selling it,

from which it is contended an implied authority to sell arises. The word "principal" in the sentence last quoted does not refer to the stock itself, which is the subject matter of the trust. It will be recalled that the testator provided that moneys arising from the sale of real estate should be paid one-third to testator's wife, and the remaining two-thirds should be deposited in a trust company at the usual rate of interest, which interest should be paid to testator's wife to aid in the up-bringing of the children, the principal to remain intact until the children are twenty-five years of age. Now the testator in the paragraph referring to his stock in Burns Development Company, provides that "any money or income" received by the trustees from said stock shall be disposed of in exactly the same way, that is, one-third to testator's wife and the remainder to be deposited in a trust company and the income paid to the guardian for the care of his children. It is then that the testator provides that if the income from the sources "above named" are not sufficient to care for his children, the trustees may in their discretion allow the guardian a larger amount, even of the principal. The "principal" so referred to obviously is not the stock itself in the Burns Development Company, which is the subject matter of the trust, but is the principal of the moneys to be deposited in a trust company by the trustees from funds derived from said stock, from the dividends or other income thereon, and from the real estate, the interest upon all of which is to be devoted to the up-bringing of the children, and the "principal" of which is to remain intact until the children are twenty-five. It is that "principal" the trustees are authorized to invade if necessary, and not a sale of the stock which is the subject matter of the trust, that the testator had in mind in the latter part of the paragraph under consideration when he authorized the trus-

tees in their discretion to allow the guardian a large amount, even of the "principal," to care for testator's children. The result of this construction would be that the trustees are authorized to allow the children the whole of their two-thirds of the dividends from this stock and proceeds of the real estate, if necessary.

I am therefore of the opinion that the order overruling the demurrer to the bill should be affirmed.

TERRELL, C. J., AND ELLIS, J., concur.