# Third District Court of Appeal

## State of Florida

Opinion filed April 3, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-2027
Lower Tribunal No. 12-732
_____

**Charles J. Sibley, Trustee,**
Appellant,

vs.

**In Re: Estate of Curtiss F. Sibley,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Maria M. Korvick, Judge.

Charles J. Sibley, in proper person.

Law Offices of Louise T. Jeroslow, P.A., and Louise T. Jeroslow, for appellee.

Before EMAS, C.J., and FERNANDEZ and HENDON, JJ.

EMAS, C.J.

**Introduction**

Charles Sibley (brother of decedent, Curtiss Sibley, and Trustee of the Curtiss F. Sibley Revocable Living Trust) appeals the trial court's order[1] which (1) determined that the Curtiss F. Sibley Charitable Foundation (the Foundation) was "not in existence" upon Curtiss' death; and (2) based upon that determination and pursuant to the Trust's provisions, ordered Charles to distribute all assets and monies in the trust estate to Fellowship House (Appellee) as the residual beneficiary. Because there is competent substantial evidence to support the trial court's factual determinations, and because the trial court correctly applied the relevant law, we affirm.

**Facts and Procedural Background**

Before his death, Curtiss executed both a will and a revocable living trust, naming Charles the personal representative of the estate and Trustee. The Trust provided, in pertinent part:

> Upon the Settlor's death, the Trustee shall distribute the trust estate as follows:
>
> . . .
>
> (B) Two hundred and fifty thousand dollars ($250,000.00) to the FELLOWSHIP HOUSE FOUNDATION of South Miami, Florida

---

[1] This nonfinal order is appealable pursuant to Florida Rule of Appellate Procedure 9.170(b)(15)(authorizing appeals in probate cases from orders that "make distributions to any beneficiary").

. . .

> (D) All remaining trust estate to the Settlor's charitable foundation, the CURTISS F. SIBLEY CHARITABLE FOUNDATION. If the [Foundation] **is no longer in existence upon the Settlor's death**, then the Trustee shall distribute all of the remaining trust estate to the FELLOWSHIP HOUSE FOUNDATION of South Miami, Florida.

(Emphasis added).

Upon Curtiss' death, Charles was required as Trustee to distribute certain bequests, including the above $250,000 bequest to Fellowship House. In 2017, Fellowship House filed a Petition to Reopen for Subsequent Administration, alleging that, upon Curtiss' death, the Foundation was "no longer in existence" and therefore, pursuant to the Trust provisions, the remaining trust estate must be distributed to Fellowship House as the residual beneficiary.

The trial court conducted an evidentiary hearing in September 2018. It was established at the hearing that on September 23, 2011 (three months before Curtiss' death), the Foundation was administratively dissolved, and was not reinstated until July 9, 2012 (seven months after Curtiss' death). Charles testified at the hearing and acknowledged he never funded the Foundation (even though he was in control of the Trust funds), opened a bank account for the Foundation, or filed any Foundation paperwork with the IRS.[2]  Instead, he explained that in 2018

---

[2] Although Charles asserted that the Foundation was "in good standing" with the IRS, he offered no documents or other evidence to corroborate this assertion, and failed to provide any such documents in response to the Foundation's discovery requests seeking production of same.

3

(seven years after his brother's death), the Foundation was now "ready" to be funded.

Following the hearing, the court concluded that the Foundation "was not in existence" when Curtiss died because it had been administratively dissolved three months before his death and had not been reinstated until seven months after his death. The court further concluded that the Foundation was a "non-functioning option" and that Charles, as Trustee, "failed to fund the Foundation, open a bank account for the Foundation or file the necessary Foundation filings with the IRS."

Based upon this determination, and consistent with the express provision of the Trust, the court entered an order requiring Charles (as Trustee) "to forward to Fellowship House, as the Trust residual beneficiary . . . all assets and monies in the Trust Estate . . . ." This appeal followed

**Analysis**

There is competent substantial evidence to support the trial court's determination that the Foundation was "no longer in existence" on December 27, 2011, the date Curtiss died. Charles concedes that, at the time of Curtiss' death, the Foundation had been administratively dissolved and was not reinstated until July 9, 2012, seven months later. Nevertheless, Charles contends that the trial court erred in equating the Foundation's administrative dissolution with it being "no longer in existence" as provided in the Trust. Charles relies on section

4

607.1421(3), Florida Statutes (2011), which provides in part that "a dissolved corporation continues its corporate existence." However, the statute reads in its entirety:

> A corporation administratively dissolved continues its corporate existence <u>but may not carry on any business except that necessary to wind up and liquidate its business and affairs</u> under s. 607.1405 and notify claimants under s. 607.1406.

(Emphasis added).

Given the fact that the Foundation had been administratively dissolved on the date of Curtiss' death (in addition to the other evidence regarding the Foundation's non-functioning status), the trial court properly determined the Foundation was no longer in existence, and on the date of Curtiss' death was authorized only "to wind up and liquidate its business and affairs."

Additionally, Charles contends that because the Foundation was reinstated ten months after it was administratively dissolved (and seven months after Curtiss' death), the trial court erred in not relating back the reinstatement to the date of the administrative dissolution, thereby treating the Foundation as if it had never been administratively dissolved. Charles relies for this proposition on section 607.1422, Florida Statutes (2011), which provides in pertinent part:

> (1) A corporation administratively dissolved under s. 607.1421 may apply to the Department of State for reinstatement at any time after the effective date of dissolution. The corporation must submit a reinstatement form prescribed and furnished by the Department of State or a current uniform business report signed by the registered

5

agent and an officer or director and all fees then owed by the corporation, computed at the rate provided by law at the time the corporation applies for reinstatement.

(2) If the Department of State determines that the application contains the information required by subsection (1) and that the information is correct, it shall reinstate the corporation.

(3) <u>When the reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred.</u>

(Emphasis added.)

However, we hold that this statutory provision does not apply to the issue presented here: a determination of whether, at a fixed point in time (the date of Curtiss' death), the Foundation "was no longer in existence" as instructed by the Trust's time-certain testamentary provision.

Were we to apply the relation-back provision of section 607.1422 to the instant circumstance, as urged by Charles, the administration of an estate might never achieve finality, because an administratively dissolved beneficiary might (at some unknown point in the future) be reinstated and seek application of the relation-back provision to establish its nunc pro tunc existence. As Fellowship House aptly noted in its brief: "To assume the ability to perpetually reinstate the Foundation by [Charles] (or anyone else for that matter) after the death of Curtiss renders meaningless the testamentary instruction, as the Foundation could, quite

6

possibly, always be in existence as long [as] someone prospectively filed the necessary annual reports and paid the delinquent fees."

We agree, and recognize that "a basic tenet in the construction of trusts is to ascertain the intent of the settlor and to give effect to this intent." Arellano v. Bisson, 847 So. 2d 998, 1000 (Fla. 3d DCA 2003) (citing Bacardi v. White, 463 So. 2d 218, 221 (Fla. 1985)). The question presented here is not whether the Foundation could, post-reinstatement, resume "carrying on its business as if the administrative dissolution had never occurred." § 607.1422(3), Fla. Stat. (emphasis added). Instead, the very different question is whether, at a precise point in time, the Foundation was "no longer in existence." The affirmative answer to this question triggered an expressed Trust directive, requiring the Trustee to "distribute all of the remaining trust estate to the FELLOWSHIP HOUSE" rather than to the Foundation.

To apply the relation-back provision of section 607.1422 to this determination would unquestionably frustrate Curtiss' intent as set forth in the Trust, rendering it incompatible with the paramount rule of testamentary construction. See Sorrels v. McNally, 105 So. 106, 109 (Fla. 1925) (holding: "To ascertain and give effect to the intent of the testator is the cardinal rule of testamentary construction.")

Affirmed.

7