**HENRY J. KRISSOFF, as Executor of the Last Will and Testament of Louisa Merrick Falkenreck, et al., v. THE FIRST NATIONAL BANK OF TAMPA and THOMAS F. COUSINS, as Trustees under the Last Wil and Testament of Joseph B. Cousins, deceased, et al.**

32 So. (2nd) 315          June Term, 1947
October 24, 1947          Division A
Rehearing denied November 19, 1947

*Fowler, White, Gillen, Yancey & Humkey,* for appellants.

*John C. Pinkerton, Williams & Dart, Evans & Glenn, Stephen B. Jennings* and *J. Irvin Walden,* for appellees.

TERRELL, J.:

Joseph B. Cousins executed his last will June 23, 1938. He made bequests direct to his wife and other legatees and directed his executors to pay all his just debts, funeral expenses and taxes. From the balance of his estate he created a trust, designated trustees to administer the trust estate and gave them specific instructions for doing so, the primary condition being that it be distributed after the death of his wife. The First National Bank of Tampa and Thomas F. Cousins were designated as Trustees.

This suit was instituted in equity by the Trustees, seeking an interpretation of Article thirteen of the will. Article thirteen vests the residuary or trust estate in said trustees and directs them to pay the net income therefrom to the wife of the testator during her life. After her death it directs them to pay named legatees designated amounts and when this is done, to divide the remaining trust estate into twenty-seven (27) equal portions and distribute it among other legatees named in the will.

The pertinent part of article thirteen to this litigation is as follows:

"After the death of my wife Harriet H. Cousins, I direct my Trustees to make distribution of the corpus of my trust estate, and any accumulations thereto arising during the process of such distribution as follows:

"(A) I direct that the sum of Five Hundred ($500.00) Dollars be paid to each of the following named persons:

"(1) Mrs. Sarah (Cousins) Dix,

"(2) Mrs. Susan (Cousins) Wheeler, daughters of my uncle Thomas Cousins:

"(3) The daughter, whose correct name I am unable to definitely recall, of Emma (Cousins) Street, a daughter of my uncle Thomas Cousins.

"(4) Elsie Cummings, a daughter of Fannie (Cousins) Cummings, the latter being a daughter of my Uncle Thomas Cousins.

"(5) The sister of Elsie Cummings, named in the foregoing paragraph (4), a daughter of the said Fannie (Cousins) Cummings.

"(6) To each of four daughters, Annie Hubert, Grace Wagner, Ada Sloat, and Amelia Clinch, of my father's sister, Mrs. Ann Merrick.

"(7) To each of the two daughters, Harriet Cue, and Martha McLean, of my Father's sister, Mrs. Mary Merrick.

"(8) Edward Carpenter, of Brooklyn, New York,

"(9) James Regan, of Rockville Center, New York.

"(10) Jack Jones, Mary Emma Jones, and John Elkins, our household employees, if each respectively shall be in our employ at the time of my death. If either be not so employed then this gift shall become null and void, and of no force and effect as to the said unemployed person.

"(B) I direct that the sum of One Thousand ($1,000.) Dollars be paid to each of Mrs. Cousins daughters, Mrs. Mildred Dervoe and Mrs. Carolyn MacDonald.

"(C) I direct that the sum of Three Thousand ($3,000.) Dollars be paid to Mrs. Mary Cousins of Norwalk, Connecticut.

"(D) I direct that the sum of Five Thousand ($5,000.) Dollars be paid to the Church of the Redeemer, Episcopal, of Sarasota, Florida, to be held by said Church or the Vestry thereof, (and not the parent body of such Church) and used by it as a part of a building fund for a new Church building, or in the event such Vestry may decide to remodel or rebuild the present Church edifice instead of building a new building, said fund may be used for such rebuilding or remodeling, but it is my intention that such fund shall be used for building purposes and not for furnishings or refurnishings.

·"(E) I direct that in the event any of the hereinbefore named persons shall predecease both me and Mrs. Cousins, the bequest herein made for such person and/or persons shall lapse and the amount of such bequest or bequests shall be added to my trust estate and be disposed of as hereinafter provided.

"(F) I direct that any of my Trust Estate remaining after making payment of the foregoing bequests, together with the sums of any bequests that may have lapsed, shall be divided into twenty-seven (27) equal portions, and such portions paid as follows:

"(1) Two (2) portions to each of the following: Miss Clara Cousins, Mrs. Mary Cousins, Mrs. Amelia Aubrey, Mrs. Louisa Falkenreck,. Mrs. Mildred Dervoe, Mrs. Carolyn Mac-Donald, Miss Harriet Williams, Mrs. Harrison Woodhull:

"(2) One (1) portion to each of the eleven persons named in paragraph (A) foregoing, sub-paragraph (1) to (7) both inclusive, to-wit: Mrs. Sarah Dix, Mrs. Susan Wheeler, Mrs. Annie Hubert, Mrs. Grace Wagner, Mrs. Ada Sloat, Mrs. Amelia Clinch, Mrs. Harriet Cue, Mrs. Martha McLean, Elsie Cummings, a daughter of Fannie (Cousins) Cummings, and also to her sister, and to the daughter of Emma (Cousins) Street.

"In the event any of the above named persons shall predecease both me and Mrs. Cousins the share or shares of such deceased legatee or legatees shall lapse and be divided among the survivors in the proportions as hereinabove provided."

The bill of complaint alleges that Joseph B. Cousins hereinafter referred to as the testator, died June 13, 1941, and that his widow, Harriet H. Cousins, hereinafter referred to as the life tenant, died August 24, 1945. It also alleges that Mrs. Harriet Merrick Cue, one of the legatees named in the will, died April 17, 1938, before the death of the testator or the life tenant, and that the following named legatees survived the testator but died prior to the death of the life tenant:

Louisa Merrick Falkenreck, James Regan, Susan (Cousins) Wheeler, Martha Merrick McLean, Amelia Merrick Clinch and Mary (Amelia Holmes) Cousins.

The point for determination is whether the legacies bequeathed to these deceased legatees, lapsed or whether they are still due and payable to the personal representatives of said legatees. At final hearing on bill and answer, the chancellor held that under the terms of the will they lapsed and were not payable to the representatives of the deceased legatees. This appeal is from that decree.

The answer to the question so proffered turns on that of whether the remainder interest in the trust estate by the will of the testator, vested in the legatees at his death or at the death of the life tenant. Appellants urge eight questions to demonstrate that said remainder vested in the legatees at the death of the testator. These questions in the main revel in generalities with which we are in accord, but here we are confronted with a concrete case which the principles of law embodied in these questions is alien to. We have in other words a perfect exemplification of the Holmes dictum that "general principles do not decide concrete cases." General principles in fact make sense only in the context that supports or verifies them. They are of little or no value in any other context or environment. The Jeffersonian dictum that "all men are created equal" likewise scotches the point in that it was designed to raise an American Citizen to the level of an Englishman, no one then thought that it raised an American slave to the level of an American merchant or planter. So it follows that legal concepts vanish into thin air when supported by nothing more than assumptions which are contrary to fact.

General principles may decide concrete cases if they harmonize with the facts and the law elicited from them. With these observations let us examine the context with which appellants preface the application of their generalities. In this case there was no evidence taken, so the context to which we are bound is limited to the words of the testator in his will. Reading the will in toto we cannot escape the conclusion that the primary concern of the testator was to make sure that his wife be secured for life from the net income derived from his trust estate. "After" her death two classes of beneficiaries or remaidermen were designated by the will. The first class is defined in paragraphs (A) to (D), and the second class in paragraph (F) of the will.

The will shows on its face that the legacies of neither class of legatees vested till "After the death of my wife." The will also shows that a condition of vestiture to those in the first class was that they survive "both" the testator and his wife, otherwise the legacy lapses and such bequest is "added to my trust estate, and be disposed of as hereinafter provided." The bequest to the second class of legatees derives from that part of the "Trust estate remaining after making payment of the foregoing bequests, (those in the first class) together with the sums of any bequests that may have lapsed." The bequest to the second class of legatees is limited to those. in that class who survive "both" the testator and the life tenant and the part of any legatee who may predecease them must revert to the trust estate to be divided among the surviving legatees as directed in the will.

So the second conclusion to which we are driven from the very terms of the will is that the legacies to neither class vested till after the death of the testator and the life tenant. There were twenty of these legatees or remaindermen in the first class and nineteen in the second class, some of them were only collaterally related to the testator, while the others were in no way related to him. None was to receive a penny till after the death of the life tenant, and then on condition that they survived both the testator and the life tenant. The terms of the will nowhere show any obligation or desire on the part of the testator to pay anything to the heirs or personal representatives of any of the legatees and the requirement that all legacies lapse on the death of the legatee would eliminate them. Every presumption that may be reasonably drawn from the language of the will eliminates them from any consideration by the testator.

The main contention of appellants is that only those legacies of remaindermen who predecease both the testator and the life tenant lapse and that the legacies of those remaindermen who do not predecease both vested at the death of the testator. If the two paragraphs of Article thirteen stating the conditions under which the legacies lapse are read in isolation there is some support for this contention, but it vanishes when the will is read as a whole. Paragraph thir-

teen deals only with the trust estate. Other paragraphs make bequests to the wife and other legatees. When all are read together we cannot escape the conclusion that the interests of the remaindermen to the trust estate was contingent, that it vested at the death of the life tenant in the legatees who survived her.

Appellants contend further that the testator employed the language defining the conditions under which the legacies lapse to forestall the application of Section 731.20 F.S.A. We doubt seriously if this section has any reference to estates in remainder, though we are not required to and do not decide that point here. It is enough to say that we find no basis in sound reason to support this contention, while we find much to refute it.

In so holding we do not overlook appellants' contention as to vested and contingent remainders and the class to which the remainder in question belongs. This Court is committed to the doctrine that remainders vested on the death of the testator or at the earliest date possible unless there is a clear intent expressed to postpone the time of vesting. It is also settled that in case of doubt as to whether a remainder is vested or contingent, the doubt should be resolved in favor of its vesting if possible, but these general rules all give way to the cardinal one that a will must be construed so as to give effect to the intent of the testator. We think the words of the will in this case show beyond doubt that the remainder in this case was a contingent one and only those participated in it who survive the testator and the life tenant.

In Travis v. Ashton, 156 Fla. 529, 23 So. (2nd) 725, this Court approved the doctrine that if the element of futurity is annexed to the substance of the gift rather than the enjoyment of it, vesting is suspended and the gift is contingent. Every provision of the will affecting the trust estate, to-wit: (1) that requiring payment to the wife for her life; (2) that for payment or specific bequests to the designated legatees, and (3) that for payment to the last named remainderman, was fraught with the element of futurity and brought the instant case within the rule of the last cited cases.

Other phases of the case discussed by appellants have been considered but we think it clear that when the will is read in its entirety it was the intention of the testator that the remainder of the trust estate vested after the death of the life tenant and then only in those remaindermen named in article thirteen who survived both the testator and the life tenant, hence the decree appealed from is free from error and is affirmed.

Affirmed.

THOMAS, C. J., CHAPMAN and SEBRING, JJ., concur.