406 So.2d 469 (1981)
In re ESTATE OF David H. RICE, Deceased.
Jack RICE, Florence Rice and Dr. Jack S. Rice, Jr., Appellants,
v.
Murray A. GREENBERG and Flagship National Bank of Miami, Personal Representatives of the Estate of David H. Rice, Deceased, and Caroline Rice, Appellees.
No. 79-2252.
District Court of Appeal of Florida, Third District.
September 29, 1981.
Rehearing Denied December 18, 1981.
*470 Smith, Mandler, Smith, Werner, Jacobowitz & Fried and Samuel Smith, Miami Beach, Teller, Chaney & Rector, Vicksburg, Miss., for appellants.
Hylan H. Kout and Harry A. Greenberg, Miami Beach, for appellees.
Before SCHWARTZ and NESBITT, JJ., and VANN, HAROLD R. (Ret.), Associate Judge.
NESBITT, Judge.
This is an appeal from a judgment construing a will. Once again, the task of the courts is to determine and effectuate the intention of a testator as gleaned from the words employed in his last will and testament. We are aided in this task by the canons and rules of construction, though centuries old, which provide us with a reliable gauge to ascertain the testator's intention.
In his seventy-eighth year, the testator took a third wife, Caroline, who survived him. Four days before their marriage, they entered into a prenuptial agreement by which Caroline agreed to make no claim against the testator's estate as a surviving spouse. One month later, the testator executed his last will and testament in which he made a specific devise of a condominium apartment to Caroline together with its furnishings and effects. In other dispositive provisions, he made specific bequests and devises to other relatives and friends. After directing that costs, debts, and taxes be paid following distribution of the specific bequests and devises, the testator divided his residual estate into two parts to be known as: (a) a marital trust; and (b) a residuary trust.
The marital trust contained the conventional and traditional language so familiar to scriveners that we simply allude to it as a boilermaker trust in which the testator unequivocally expressed a desire for it to qualify for the marital deduction. The trustees were given the power to invade the marital trust so as to assure that Caroline would receive a guaranteed income of not less than $10,000 per annum for her maintenance. They were also given other provisional authority to invade the marital trust for medical and other emergency expenses not to exceed an additional $5,000 per annum. If Caroline survived him, she was given the power to appoint the assets of the marital trust.
In the event that Caroline did not survive him, or if she did survive him but did not appoint the assets of the marital trust prior to her death, the assets of the marital trust were to be added to the residuary trust. Upon the happening of either event, the residuary trust was to terminate and the assets of the trust were to be distributed to the alternate contingent beneficiaries, of which the testator's brother, Jack, was the first mentioned.
The decedent departed this life at the age of eighty-one. His will and codicils[1] were *471 duly admitted to probate and his estate was administered to the point that estate and inheritance tax returns claiming the full marital deduction were filed and granted by the Internal Revenue Service. The co-personal representatives then filed a petition for construction of the decedent's will and for an adjudication to: (1) determine that the testator's brother, Jack, did not become a vested remainderman of certain bank stock devised to the residuary trust; (2) authorize the sale of a sufficient amount of bank stock which comprised the residuary trust to fund the marital trust to the maximum amount allowable; (3) subject the marital trust (funded with the bank stock) to a power of appointment in the testator's surviving wife, Caroline; and (4) allow the proceeds from the sale of the bank stock remaining in the residuary trust to be used to defray administrative costs.
The testator's brother, Jack, as well as the other remaindermen, filed a response alleging that the bank stock constituted a specific bequest and became part of the residuary trust which vested with Jack, subject to Caroline's beneficial interest, on the death of the testator. They maintain that because it was a specific bequest and part of the residuary trust that: (a) no part of the bank stock could be used to fund the marital trust; and (b) Caroline would consequently have no power of appointment thereover.
After receiving testimony from the scrivener of the decedent's will and a trust officer concerning the administration of the marital and residuary trusts, the probate court granted the co-personal representatives' petition for construction of the will. Jack, as well as the other alternate contingent beneficiaries of the residuary trust have appealed. We reverse.
The primary issue is whether the bank stock bequeathed to the residuary trust was vested or contingent, subject of course in either event to Caroline being the life income beneficiary thereof. The appellants contend that the residuary trust was vested and Caroline contends that the residuary trust is simply contingent. The secondary question to be resolved is whether the bequest of the bank stock as part of the residuary trust constituted a specific or a general bequest. Determination of the second issue makes little difference in the amount of income which Caroline, as the life income beneficiary, will receive; however, it will of course affect her power of appointment over the bank stock. On the other hand, this question is of considerable concern to Jack because if it is determined that the bank stock is a general bequest, it would be the first portion of the estate utilized (on a pro rata basis with other portions of the residuary estate) to pay debts, expenses, fees, estate and inheritance taxes, and other costs of administration. If it constituted a specific bequest, although in trust, it would become the last portion of the residuary estate to bear the impact of the foregoing. See § 733.805, Fla. Stat. (1977).
We commence our labor by reviewing the canons and rules of construction to determine the intent of a testator. The learned professor, Thomas, in his treatise, Florida Estates Practice Guide (1979 Printing) [original published 1964], states these canons with great precision and depth of understanding as follows:
CHAPTER 16 § 4
Construction of a will means the determination of the legal effect of dispositions made in a will in view of the testator's intent. It is nothing more than an attempt to determine a testator's desires with reference to all matters relating to his estate. Construction of a will requires an attempt to determine the subjective intent of the testator.
The courts are not concerned with what a reasonably prudent person would have done under like circumstances, but rather attempt to determine what the testator actually meant by the terms and expressions used in his will.
Chapter 16 at 16-5.
CHAPTER 16 § 18
In the construction of wills, a presumption is created that the language used by *472 the testator expresses his intention. This intent must be ascertained from the four corners of the instrument. The will must be construed in its entirety and segments will not be isolated in ascertaining the desires, wishes and intent of the testator.
Chapter 16 at 16-24.
CHAPTER 16 § 19
It is generally agreed that language used in a will is to be construed according to its primary and ordinary meaning unless a different meaning is intended by the testator. Consistent with this proposition, technical or legal words employed in a will are presumed to have been used in their settled legal meaning, unless a contrary intent is manifested. In other words, it will be presumed that the testator used the words according to the meaning which the law attaches to them, and as a consequence such words will be given their ordinary legal meaning. If a will has been drafted by an experienced attorney, it would appear that a presumption would be created that an attorney used the technical words in their technical sense. Of course, technical words should not always be construed according to their technical meanings, since the intent of the testator, in the final analysis, governs.
Chapter 16 at 16-25, 16-26.
Our Legislature has, by enactment of Section 732.6005(1), Florida Statutes (1977),[2] further entrenched into the jurisprudence of this state the familiar common law rule, to which all other rules of construction must yield, that the testator's intent is the polestar when construing any testamentary instrument. Section 732.6005(1), supra, provides:
732.6005 Rules of construction and intention. 
(1) The intention of the testator as expressed in his will controls the legal effect of his dispositions. The rules of construction expressed in this part shall apply unless a contrary intention is indicated by the will.
We now turn our attention to the pertinent provisions of the testator's last will and testament which provided for the distribution of the assets in the residuary trust upon termination of the trust and the resolution of the question of whether the bank stock vested.
ARTICLE NINTH (C) (1)
To my brother, JACK RICE, thirteen thousand one hundred seventy-seven (13,177) shares of Deposit Guaranty Bank of Jackson, Mississippi stock which I own, outright. In the event my brother, JACK RICE, predeceases me, then I bequeath said thirteen thousand one hundred seventy-seven (13,177) shares of Deposit Guaranty Bank of Jackson, Mississippi stock to my sister-in-law, his wife, FLORENCE RICE, outright. In the further event that my sister-in-law, FLORENCE RICE, predeceases me, then I give and bequeath said thirteen thousand one hundred seventy-seven (13,177) shares of Deposit Guaranty Bank of Jackson, Mississippi stock to my nephew JACK RICE, M.D., outright.
ARTICLE TENTH
In Article NINTH (C)(1) of this my Last Will and Testament, I bequeath thirteen thousand one hundred seventy-seven (13,177) shares of Deposit Guaranty Bank of Jackson, Mississippi stock to the person or persons set forth therein. It is my wish and desire that in the distribution of the assets of my estate between the Marital Trust and the Residuary Trust, that the asset consisting of thirteen thousand one hundred seventy-seven (13,177) shares of Deposit Guaranty Bank of Jackson, Mississippi stock that I own, shall be distributed to the Residuary Trust subject, however, to the proviso that my providing for the distribution of this asset in this fashion, shall in no way affect the *473 validity of the Marital Trust created under this my Last Will and Testament. If in any way, my desire and direction concerning the distribution of this asset will affect the validity that the distribution of this asset shall be made in such a way that it will not destroy the validity of said Marital Trust.
While the devise of the bank stock was to specific named trustees as authorized by Section 732.513(1), Florida Statutes (1977) [compare Section 731.201(9), Florida Statutes (1977)], it was the death of the testator which vested the right to the devise under Section 732.514, Florida Statutes (1977).
732.514 Vesting of devises.  The death of the testator is the event that vests the right to devises unless the testator in his will has provided that some other event must happen before a devise shall vest.
Section 732.514 is declaratory of one of the canons of common law construction. Story v. First Nat. Bank & Trust Co., in Orlando, 115 Fla. 436, 156 So. 101 (1934). In Krissoff v. First Nat. Bank of Tampa, 159 Fla. 522, 32 So.2d 315 (1947) the court stated:
This Court is committed to the doctrine that remainders vest on the death of the testator or at the earliest date possible unless there is a clear intent expressed to postpone the time of vesting. It is also settled that in case of doubt as to whether a remainder is vested or contingent, the doubt should be resolved in favor of its vesting if possible, but these general rules all give way to the cardinal one that a will must be construed so as to give effect to the intent of the testator. [emphasis supplied]
32 So.2d at 318. Accord, Thompson on Wills, Third Edition, § 362 (1947). Another case much on point is Sorrels v. McNally, 89 Fla. 457, 105 So. 106 (1925) where that court, in pertinent part, stated:
[E]states in remainder vest at the earliest period possible, unless a contrary intention on the part of the testator is clearly shown. When it is a remainder after a life estate, it is regarded as a vested remainder and the possession only is postponed.
105 So. at 111. In Sorrels v. McNally, the count was confronted with a situation very much like the one at hand and from the words of the testator found that a resulting trust had been created which nonetheless vested subject to postponement of the use and enjoyment by a named beneficiary.
It is true, as appellees argue, that Article NINTH of the will specifically provided that the marital trust would be first set apart. However, because Section 732.514, Florida Statutes (1977) codifies common law doctrine with respect to early vesting, we have no doubt that the bank stock vested and hence was never available to be set apart from the residuary estate.
Appellee's next contention which we do not find persuasive is that the provisions of Article NINTH (A) of the will which in part provides: "If my wife, CAROLINE RICE, survives me, ..." constitutes a condition precedent to the devise of a bank stock to the co-trustees for the benefit of Jack subject to Caroline's previous beneficial estate. As we understand the provision, it constitutes a condition subsequent which terminates the residuary trust and causes distribution of the bank stock from the residuary trust to the testator's brother, Jack pursuant to Article TENTH (C)(1) of his last will and testament. By Article TWO of the Second Codicil to his last will and testament, the decedent provided:
"I hereby modify and amend paragraph (A) of ARTICLE `EIGHTH' on page 8 of my Last Will and Testament so that said paragraph (A) shall now read as follows:
(A) "If my wife, CAROLINE RICE, survives me, I give and devise to the Trustees of said Marital Trust, as Trustees IN TRUST NEVERTHELESS, an amount equal to FIFTY (50%) PERCENT of the value of my adjusted gross estate as finally determined for Federal Estate Tax purposes less the aggregate amount of marital deduction, if any, allowed for such tax purposes, by reason of property or interest in property passing or which have passed to my wife otherwise, than by the terms of this Article of my Will or *474 TWO HUNDRED FIFTY THOUSAND ($250,000.) DOLLARS, whichever is greater, or ONE-HALF (1/2) of my adjusted gross estate, whichever is greater, pursuant to the provisions of the Tax Reform Act of 1976."
We are also not persuaded by appellee's contention that the proviso in Article TENTH (that the distribution of the residuary estate shall not affect the validity of the marital trust) affected the immediate vesting of the bank stock, in trust, in Jack. After having created a boilermaker marital trust in favor of Caroline pursuant to Article EIGHTH (A), the testator clearly evinced the desire for the marital trust to qualify for the marital deduction pursuant to Article EIGHTH (B) and specifically provided in Article EIGHTH (D)(11) that the power could not be exercised in any way which would disqualify the marital trust for a marital deduction. In Article FIRST, (C), the testator incorporated this provision: "I am cognizant that the provisions of the Federal Internal Revenue Code... ." We have no reason to doubt the knowledge of the testator because we find in Article EIGHTH (B) this language:
No asset or proceeds of any asset shall be included in the Marital Trust as to which a marital deduction is not allowable if included. Said bequest shall abate to the extent that it cannot be satisfied in the manner hereinabove provided.
Moreover, in Article EIGHTH (C), the testator further provided:
In no event shall there be included in said Marital Trust any asset or proceeds of the sale of any asset with respect to which a marital deduction would not be allowable if so included.
It is to be observed that under 26 U.S.C.A. § 2056(b), and the Treasury Regulations which implement the statute, the surviving spouse's beneficial interest in the bank stock will terminate upon her death and is to be distributed from the residuary trust to Jack Rice. Consequently, she did not receive an unqualified power of appointment and therefore the bank stock cannot qualify for the marital deduction. Article TENTH is but another place in the decedent's last will and testament in which he expressly prohibited inclusion and distribution of bank stock from the residuary trust to the marital trust if it would affect the validity of the marital trust.
Similarly, we do not find merit in the appellees' position that the proviso in Article TENTH prevented the stock from vesting in the residuary trust in favor of Jack. Again, there was nothing that required Caroline's death to vest the stock. Caroline's death only terminates the residuary trust and causes the distribution of the stock outright to the named beneficiary, Jack. Moreover, the testator's "wish and desire" that the bank stock be placed in the residuary trust is a command rather than a precatory statement when addressed to a fiduciary. Lines v. Darden, 5 Fla. 51, 71 (1853). If, under this proviso, placement of the bank shares in the residuary trust affects the validity of the marital trust, the co-personal representatives were to consider another manner of distribution. The distribution of the residuary trust does not destroy the validity of the marital trust. Therefore, this proviso never became operative.
There is another reason which buttresses the appellant's contention that the shares could not be used to fund the marital trust. That is the testator's references to the bank stock were to it as a single asset which was to be dealt with in solido or en masse as an indivisible asset. The provision concerning "validity" of the marital trust in no way evinces the clear and decisive intent that the bank stock was used to "fund" the marital trust.
Additionally, as stated by Professor Thomas and quoted in In re Roger's Estate, 180 So.2d 167, 171 (Fla.2d DCA 1965):
When an interest is clearly and expressly conveyed by one clause of a will, the devise or bequest will not be considered taken away or diminished by subsequent words unless they are equally clear and decisive of the testator's intention. The theory for this holding is to the effect that where a testator positively makes a *475 devise or bequest, there can be no intent in his mind to take it away or cut it down. An absolute gift of a property interest cannot be cut down by subsequent provisions unless words are used which are as clear and decisive as the words making the conveyance. [emphasis supplied]
Thomas, Florida Estates Practice Guide § 31 16-37, 16-38 (1979 Printing) [originally published 1964].
Finally, we reach the question as to whether the bequest of the bank stock constituted a specific or general bequest. Under Article NINTH (C)(1), if Caroline died before the testator, everything was specifically bequeathed to the beneficiaries named therein of which Jack was the first named. Under Article NINTH (C)(2), the balance or remainder of the testator's undistributed estate and accumulations were bequeathed to Jack. In the interim, between the death of the testator and the death of Caroline, it was provided that Caroline was a life income beneficiary in the residuary trust as follows:
ARTICLE NINTH (B)
After paying all taxes and costs of administering the Residuary Trust ... the Co-Trustees, commencing with the date of their qualification, shall pay all of the net income from said Residuary Trust to my beloved wife, CAROLINE RICE, in quarter-annual installments in the Co-Trustees' discretion during this Trust, and the same shall be paid by the Co-Executors or by the Co-Trustees, in accordance with the law in force at the time of my death. My said wife shall also be entitled to a net income from said Residuary Trust from the date of my death to the date of the qualification of the Co-Trustees.
By construing Article NINTH and Article TENTH together, we have no doubt that the testator intended to devise the bank stock as a specific bequest in trust for his brother, Jack, subject to the prior beneficial life estate in his surviving wife, Caroline. In Park Lake Presbyterian Church v. Estate of Henry, 106 So.2d 215, 217 (Fla.2d DCA 1958), that court had the occasion to define a specific legacy as "a gift of a particular thing or of a specified part of the testator's estate so described as to be capable of distinguishment from all others of the same kind." Under this definition, it is clear that a specific bequest rather than a general or demonstrative bequest was intended by the testator. The specific legacy of the 13,177 shares of stock devised from a testator's residuary estate does not alter its character as a specific bequest. Annot. 128 A.L.R. 822. "Effect of designation of a particular property in residuary clause of a will." (1940), as supplemented by 72 A.L.R.2d 1170 (1960). When the language employed indicates an intention to devise specific property as part of the residuary estate, a specific legacy or devise is not rendered general by the fact that there is also a gift of the residuary estate to the same person. In re Painter's Estate, 150 Cal. 498, 89 P. 98, 101 (1907); Henderson v. First Nat. Bank of Rome, 189 Ga. 175, 5 S.E.2d 636 (1939). Therefore, there was no impediment to making such a specific bequest of property even though the specific bequest is contained in an article or provision dealing with the residuary estate. Annot. 72 A.L.R.2d 1170, supra. As in all cases construing wills, it is a question of intent to be determined by an overall reading of the last will and testament; in this case, the language employed in Articles NINTH and TENTH of the testator's will. Consequently, we hold that, pursuant to Section 733.805(1), Florida Statutes (1977), the bank shares are not part of the residuary estate from which all estate and inheritance taxes, charges, fees, and commissions chargeable to the estate are to be paid as directed in Article FIRST. It is only where the residuary estate would be insufficient that Section 733.805(1)(d), Florida statutes (1977) will authorize the co-personal representatives to utilize the bank stock to pay the foregoing. Section 733.817, Florida Statutes (1977) was not activated because apportionment was not necessary since it was not a specific bequest under Section 733.805(1)(c), supra.
*476 In reaching this conclusion, we have not overlooked Caroline's argument premised upon the proviso in Article TENTH that the bank stock not be distributed in a manner "which will affect the validity of the marital trust." At the final hearing, the bank officer testified that if the bank stock is not sold to fully fund the marital trust, then the marital trust will have an approximate value of $90,000 instead of a fully funded value of approximately $265,000. Caroline then argues that the "validity" of the marital trust will be affected if the bank stock is not used to fully fund it because the boilermaker provision of the marital trust otherwise affords her fifty per cent of the adjusted gross value of the estate for final estate tax purposes. Black's Law Dictionary 1390 (5th ed. 1979) defines: Validity of a will "[a]s used in a will contest statute has reference only to the genuineness or legal sufficiency of the will under attack." When the validity of the marital trust is employed, it has similar import. Nor can we interpret the word validity in such a way as would obviously change the testator's pattern of disposing of his estate. Thomas, Florida Estates Practice Guide, § 25 16-30  16-32, supra.
What then is the effect of either the scrivener's testimony concerning the testator's intent or the trust officer's testimony, both of which were admitted without objection and not refuted by any countervening testimony? In a word  nothing. The statute of wills is still very much an integral part of the Florida Probate Code. In short, a will must be in writing, pursuant to Section 732.502, Florida Statutes (1977). In the circumstance of patent or latent ambiguity, extrinsic evidence which bears upon the testator's intent is admissible. But a latent ambiguity is one which arises in applying the words of a will to the subject matter or object of a devise or to the devisee. Perkins v. O'Donald, 77 Fla. 710, 82 So. 401, 404 (1919); Scheurer v. Tomberlin, 240 So.2d 172 (Fla.1st DCA 1970). A patent ambiguity is one that appears in the language of a will itself. In this case, we do not find that the proviso in Article TENTH of the testator's last will and testament falls under either type of ambiguity. Consequently, we regard the unobjected to testimony of the scrivener and the trust officer as to the testator's alleged intent to be incompetent to impeach the clear and unambiguous provisions employed by the testator. Were we to hold to the contrary, we would violate the very purpose of the testator in drafting a will which is to ensure that his desires will be effectuated as opposed to being reformed by the courts to accomplish a different objective than the testator had in mind at the time he made his will.
In summary, by the terms of his last will and testament and the codicils thereto, the testator devised 13,177 shares of Deposit Guaranty Bank of Jackson, Mississippi stock, in trust, to his brother, Jack, which vested in the residuary trust upon the death of the testator but was nonetheless subject to a prior beneficial life estate in the testator's surviving spouse. The testator's intention was to provide his surviving spouse, Caroline, with a stabilized income for life through the medium of a marital trust. For added stability, he made Caroline the life income beneficiary of the residuary trust. He clearly did not want his co-personal representatives to take any action which would destroy the validity of the marital trust. The bequest of the bank stock to Jack, in trust, constituted a specific bequest. The effect of this construction is to preclude the personal representatives from using the bank stock to fund the marital trust, the result of which is that the marital trust will not be fully funded and Caroline will have no power of appointment as to the bank stock. Since the bequest of the bank stock in trust constituted a specific bequest, the bank stock shall be the last portion of the estate to defray debts, expenses, fees, estate and inheritance taxes, and other costs of administration. A portion of these may have to be paid from the marital trust.
The judgment appealed from is reversed with directions to enter a judgment in conformity with this decision.
NOTES
[1] The testator executed two codicils to his will which were basically consistent with his overall testamentary scheme except that the testamentary bequests and devises to a nephew and niece were significantly scaled down.
[2] This legislative recognition became effective as of January 1, 1976. Ch. 75-220 § 33, Laws of Fla.