408 So.2d 849 (1982)
Matthew WEINSTEIN, As Guardian Ad Litem of the Unborn Children of David L. Mackey, Etc., and Security Trust Company and Eric C. Van Enter, As Trustees of Trust under Modified Trust Agreement of Ella C. Levis, Appellants,
v.
Leslie L. MACKEY, a Minor, Jennifer L. Mackey, a Minor, David L. Mackey, Jr., a Minor, and Kirk B. Mackey, a Minor, Appellees.
Nos. 80-2257, 80-2348.
District Court of Appeal of Florida, Third District.
January 26, 1982.
*850 Matt Weinstein, South Miami, Hyzer, Knight & Lund and Eric C. Van Enter and George L. Knight, Miami, for appellants.
Giles, Hedrick & Robinson and Eugene B. Cawood, Orlando, for appellees.
Before HENDRY, SCHWARTZ and DANIEL S. PEARSON, JJ.
SCHWARTZ, Judge.
In 1973, Ella Levis executed a modified trust agreement which in part provided that after her death, the net income from a specified portion of the corpus, which consisted entirely of personalty, was to be paid "for the duration of their natural lives" to her nephew Dr. David L. Mackey and his wife, Shirley R. Mackey. Upon the death of the survivor of the Mackeys, the principal of their share was to be distributed to Dr. Mackey's children "including children born after my death, with a predeceased child's issue taking by representation."[1] *851 Miss Levis died on April 25, 1979 at the age of ninety-three. Dr. Mackey was then forty-two years of age and had four children, born between 1965 and 1970. In January, 1980, both Dr. and Mrs. Mackey executed unconditional disclaimers of their right to the income. Shortly thereafter, the trustees brought the present action for a construction of the effect of the disclaimers and instructions as to the proper disposition of the income and principal in question. Over the contrary contentions of the trustees and a guardian ad litem appointed to represent Dr. Mackey's unborn children, the trial judge ruled that the disclaimers accelerated the remainder interest so that it was immediately distributable to the four living children, to the exclusion of any afterborn ones. We affirm that conclusion.
The issue before us concerns the doctrine of acceleration, which
refers to the hastening of the owner of a future interest towards a status of present possession or enjoyment by reason of the failure of the preceding estate. 2 Simes & Smith, Law of Future Interests (2 Ed.), 263, What is Acceleration, Section 791. The doctrine of acceleration is generally used when the temporary interest, preceding the remainder, fails to come into existence, or, as in the case sub judice, coming into existence, terminates in some manner for which the testator did not provide... . The rationale given for this rule in 2 Restatement of Property 962, Comment a, Section 231 (1936), is that acceleration is in accordance with what is normally to be inferred as the intent of the `conveyor'... namely that as each successive interest sought to be created by him ends or becomes impossible, the next interest in order should move up. However, the application of the doctrine of acceleration must be in furtherance of the intention of the testator, and never in contravention thereof.
Ohio National Bank of Columbus v. Adair, 54 Ohio St.2d 26, 374 N.E.2d 415, 417 (1978). While these general principles have become well-established, Jackson v. Exchange National Bank of Tampa, 152 Fla. 528, 12 So.2d 450 (1943); Murphy v. Murphy, 125 Fla. 855, 170 So. 856 (1936), the question of their applicability to a transfer[2] of the kind involved here is one of initial impression in this state.[3]
The gift of the principal of the trust to the children of Dr. Mackey is a vested remainder in those who have already been born, with their share subject to proportionate diminishment by the birth of additional children. As to this type of interest, which is described as a remainder vested subject to open, L. Simes & A. Smith, The Law of Future Interests § 799 (2d ed. 1956); 2A R. Powell, The Law of Real Property § 309[5][c] (rev.ed. P. Rohan 1977), the generally accepted rule of construction is that a disclaimer of the prior interest indeed accelerates the remainder interest of the existing class members, and, most significantly, "closes the class" as of that time, thus eliminating any right of the unborn. The principle is stated as follows in Restatement of Property § 231, Comment i (1936).
*852 [W]hen the renounced interest is the only hindrance to the succeeding interest becoming forthwith a present interest and the succeeding interest is limited as a gift to a class in such manner that the class can increase its membership only during the stipulated period of the renounced interest, then such increase in membership is to be construed as having been intended to occur only during the actual continuance of the attempted prior interest. The renunciation of such attempted prior interest prevents the period during which such increase was intended to be possible from ever existing. The accelerated interest of each of the persons who is a member of the class at the time when the creating conveyance becomes operative is not subject to being diminished in size by such class thereafter and during the stipulated period of the renounced interest opening and admitting new members. This rule of construction is required by the intent normally to be inferred from a limitation of the type described.
Illustration 3 to this section is indistinguishable from this case:
3. A, owning Blackacre in fee simple absolute, effectively devises Blackacre `to B for life, remainder to the children of C and their heirs.' C has a child D. A dies. B renounces the provision made for him by A's will. More than one year later and prior to B's death C has a child E. D has an estate in fee simple absolute in Blackacre.
A clear majority of the cases accordingly hold that a remainder to a class, as here, of "children," "grandchildren," or the like, is both accelerated and closed upon the termination of the preceding life estate. Tomb v. Bardo, 153 Kan. 766, 114 P.2d 320 (1941); Allen v. Hannum, 15 Kan. 470 (1875); Davis v. Hilliard, 129 Md. 348, 99 A. 420 (1916); Sherman v. Baker, 20 R.I. 446, 40 A. 11 (1898); Re Davies, [1957] 4 All.E.R. 52; but cf., Trenton Banking Co. v. Hawley, 7 N.J. Super. 301, 70 A.2d 896 (1950); contra, Neill v. Bach, 231 N.C. 391, 57 S.E.2d 385 (1950); Yeaton v. Roberts, 28 N.H. 459 (1854).[4] This rule controls our decision here.
*853 It is true, as in every instance in which the acceleration doctrine is arguably applicable, see, Murphy v. Murphy, supra; In re Estate of Rentz, 152 So.2d 480 (Fla.3d DCA 1963), cert. denied, 156 So.2d 859 (Fla. 1963), that the ultimate issue is the settlor's wishes and that the acceleration-closed-class result will not obtain if the terms of the operative instrument manifest a contrary intent. Restatement of Property, supra, § 231 at pp. 970-71; 2A R. Powell, supra, § 310[2]. We do not agree, however, with the appellants' contention that such an intent appears from the statement defining the children who were to receive the principal as "including children born after my death."[5] In essence, this expression adds nothing to a general description of "children," which itself necessarily includes those born after the death of the conveyer. (Indeed, by definition, every case which involves an open class is concerned only with the rights of the afterborn.) But as we have seen, the rule is that a provision that these afterborn take at the natural end of a life estate, does not affect acceleration and closing when the estate is terminated by means other than actual death.[6] Surely, the fact that Miss Levis made that intent clear cannot serve to evince a contrary desire concerning the quite different question of whether acceleration should result. That something a great deal more is required is shown by comparing this case to those in which such a determinative manifestation of an intent to bar acceleration has been found. Compare, e.g., Askey v. Askey, 111 Neb. 406, 196 N.W. 891 (1923) (will provided for termination of wife's life estate if she remarried, but for no distribution until her natural death); Ohio National Bank of Columbus v. Adair, supra (comprehensive scheme to delay vesting so as to keep property within family for as long as possible); Restatement of Property, supra, §§ 232, 233; 2A R. Powell, supra, § 310[2], and cases collected. The words "including children born after my death" are not at all comparable and may not be given any such effect.
In considering the "intent" issue generally, it must be remembered that, by its very nature, every case in which the possibility of acceleration arises involves a threshold distortion of the settlor's desires. See Restatement of Property, supra, § 231, p. 962. His wishes as to the use of his property have been frustrated by an unforeseen and unprovided-for event, and the issue then becomes what he would have intended to happen when what he intended to happen didn't happen, and what he didn't intend to happen, happened. As has already been intimated, the question in this case is not, therefore, whether Miss Levis wanted Dr. *854 Mackey's afterborn children to share if he and his wife had received the income until they died  the trust clearly says that she did. It is rather whether, after that interest has been disclaimed, the settlor would have wanted the principal to be immediately distributed to the living children or held in a kind of equitable limbo, see note 4, supra, awaiting Dr. Mackey's natural death and thus the termination of the possibility  which is only speculative in any case  of his having other children. On this point, we must conclude from a consideration of the entire trust instrument that Miss Levis sought to grant her nephew and niece income during their lives simply as a benefit for them, rather than as a means of postponing the distribution of the corpus to the ultimate objects of her bounty, her grandnephews and grandnieces. Because, for their own reasons  probably relating to post-mortem planning  which are beyond our ken, the Mackeys do not want that benefit, there is no reason for, or, to put it more accurately, Miss Levis would have no reason to want any subsequent delay in the distribution and receipt of the principal. See Union National Bank of Charlotte v. Easterby, 236 N.C. 599, 73 S.E.2d 541 (1952), and cases cited. The implementation of this justifiably presumed intent is the basis of and is reflected in the acceleration doctrine itself, the authorities already cited which pertain to this particular legal situation, and the judgment below.[7] It is therefore
Affirmed.[8]
NOTES
[1] The clause in question had similar provisions for each of Miss Levis' three nephews. In its entirety, it reads as follows:

B. Trustees shall divide the remaining two (2) of the aforesaid five equal parts into three (3) shares, and shall keep same invested and held in trust for the benefit of the following named three (3) income beneficiaries  husband and wife where both are named to be considered one , for the duration of their respective natural lives, to wit, for the benefit of respectively: (a) my nephew Wilson C. Levis, one (1) one  third (1/3) share; (b) my nephew Bart L. Mackey and his wife, Eugenia L. Mackey, together, one (1) one-third (1/3) share; and (c) my nephew David L. Mackey and his wife, Shirley R. Mackey, together, one (1) one-third (1/3) share; each of the aforesaid income beneficiaries to be referred to hereinafter as the beneficiary, to wit: with respect to the particular trust for his/their benefit; each of the aforesaid three one-third shares to be administered by trustees as a separate trust, but investments of the several trusts hereunder, to the extent such is practicable, preferably to be combined for the three trusts. Trustees shall, as to each of said trusts: (a) pay the net income, from the date of my death, to the beneficiary, in convenient, not less frequent than quarterly, installments, the first such installment to be paid as soon as will appear to be practicable; (b) upon the death of the beneficiary  where applicable, upon the death of the survivor of husband and wife  distribute the assets of the particular trust, absolutely, free and clear of any and all trusts, to the children of the deceased nephew concerned, including children born after my death, with a predeceased child's issue taking by representation the portion of such predeceased child, or, in case such nephew dies without issue, in equal parts, to the other ones of my aforesaid three nephews, or, if applicable, their respective children or further issue, per stirpes, in each instance, in case of death issue to take by representation, the terms `children' or `issue' as used herein to be construed as meaning `lineal descendents of the blood', adopted children, if any, being expressly excluded, throughout. No income or principal of, or any other interest in, any trust established hereunder shall be alienable by its beneficiary, remaindermen included, and such income, principal or other interest shall not be subject to being taken by the beneficiary's creditors through any process, whatsoever.
[2] It is clear that the same rules apply whether the conveyance is of realty or personalty and whether it occurs by deed, will, inter vivos transfer, or, as here, the creation of a trust. L. Simes & A. Smith, The Law of Future Interests §§ 355, 801 (2d ed. 1956).
[3] Lowrimore v. First Savings & Trust Co. of Tampa, 102 Fla. 740, 140 So. 891 (1931) accelerates a vested remainder in a class of "next of kin" and fixes the members of the class as of the date of the renunciation of the life estate by the widow's election of dower. To that extent, it is like our case. It is unlike it, however, in the fact that the class was apparently subject only to decrease by death, and not, since the parents of the living "next of kin" had themselves all died, to "open" by birth of additional children, as here. We hold that the same rule nonetheless applies.
[4] It is important to point out that the cases which either, like Yeaton and Neill, apply a different rule of law or, like Askey v. Askey, 111 Neb. 406, 196 N.W. 891 (1923), find a contrary intention of the conveyer, nevertheless do not ordinarily deny acceleration altogether. Instead, they hold that the remainder is accelerated, but that the class remains open during the term of the preceding estate. See Restatement of Property § 231, Comment i, supra; L. Simes and A. Smith, supra, p. 288. Thus, in this case, the four Mackey children's interest in the corpus would be subject to progressive diminishment if their father should have other children.

We confess that one of the reasons we adopt the acceleration-class-closed rule is the utter impracticability of this alternative. It seems clear that the idea of an acceleration subject to a subsequent partial divestiture is an impossible contradiction in terms. While it may be possible for the existing remaindermen to enter into possession subject to a limitation of record in the case of real estate, see Neill v. Bach, supra, we are hard put indeed to conceive of a way in which both interests may be simultaneously assured where, as here, only personalty is involved. (The only such instance seems to be the 1854 case of Yeaton v. Roberts, supra.) If each of the four young Mackeys immediately receives the right to, say, 100 shares of stock, it is entirely unclear as to how an afterborn child may secure his interest in them. Is he to maintain an action at law against his four older siblings? Is a subsequent child to sue the preceding five? If the shares have been sold, the proceeds dissipated and an older child is judgment proof, the fact that the class remains "open" would be meaningless to the newly-born Mackey who entered it. If, on the other hand, these rights are protected by sequestering or continuing the trust as to all or part of the assets (the required proportion of which would be entirely speculative, since there is no way of knowing how many more children Dr. Mackey may have), there would be no real acceleration of the right to the principal at all. In any event, this approach would engender a welter of uncertainty which, as far as possible, the law of property should discourage. The rule favoring early vesting of estates is essentially based on this consideration. See Krissoff v. First National Bank of Tampa, 159 Fla. 522, 32 So.2d 315 (1947). Most significant of all, it may be assumed that Miss Levis, whose intentions are paramount, see Rice v. Greenberg, 406 So.2d 469 (Fla. 3d DCA 1981), would not have desired that any such confusion should be a result of her generosity.
In any case, the present appellants do not themselves seek such relief. Their position is apparently that there should be no acceleration, that the living children should receive the income during their parents' lifetime, and that disbursement of the corpus should await the father's natural death. This view has been adopted in but a single case, Cool v. Cool, 54 Ind. 225 (1876), and is accurately said by Simes and Smith to be the "construction ... least likely to be followed," § 799, supra, at p. 288. We have no difficulty in rejecting that contention as well.
[5] Since there were no children born in the interim, we need not decide whether acceleration is deemed to have occurred and the class closed as of the date of Miss Levis' death, as is usually the case, 2A R. Powell, supra, § 309[3], or when the disclaimers were filed, as indicated by Lowrimore v. First Savings & Trust Co. of Tampa, supra. We do note, however that this language may be deemed to have indicated an intent in favor of the latter rule so that any children born after her death but before acceleration would be included in the class. To that extent, and indulging the usually unmerited presumption that every word in a legal document must be given some legal effect, the phrase would have served a useful purpose without entirely defeating acceleration.

In fact, however, the phrase was probably no more than legal boilerplate through which the draftsman sought to avoid a possible implication, which would not have arisen anyway, that the "children" were limited to those born before the settlor died. We are very loath to ascribe drastic legal consequences to an insertion which likely owes its existence merely to the scrivener's maxim that one word should not be employed when ten will do as well.
[6] Even a description of the remaindermen as those who are "then living" or who "survive" the life tenant  an a fortiori situation to this one  may not be sufficient to express a conveyer's intent that acceleration should be precluded and that distribution must await the natural death of the tenant. 2A R. Powell, supra, § 310[2][b], cases collected and text at note 12.
[7] Since we base our decision entirely on common law principles, we specifically do not consider whether it might also be required by Sec. 689.21, Fla. Stat. (1979), which deals with disclaimers of interests under inter vivos trusts. See Sec. 732.801, Fla. Stat. (1979) (equivalent statute as to wills). We point out, but need not resolve, the conflicting indications which stem from the facts (a) that, as written, Sec. 689.21(3) deals only with the distribution of "the interest disclaimed"  here, the life interest  rather than the effect of the disclaimer upon the remainder; and (b) that although it generally tracks the Uniform Disclaimer of Transfers Under Nontestamentary Instruments Act, the Florida law does not contain the provision in subsection 3 of the Uniform Act which would achieve the result we adopt today. See Commissioners' Comment to identical provision of Uniform Disclaimer of Transfers by Will, Intestacy or Appointment Act, 8 U.L.A. at Supp. 1981, p. 29.
[8] We would be remiss if we did not express our appreciation to counsel for all sides for their uniformly excellent oral and written presentations.