867 So.2d 1175 (2004)
Christopher J. LUMBERT, Appellant,
v.
ESTATE OF Molly Joy Gay CARTER, Appellee.
No. 5D03-772.
District Court of Appeal of Florida, Fifth District.
February 27, 2004.
Rehearing Denied March 26, 2004.
*1176 Charles D. Hood, Jr., and K. Judith Lane, Smith, Hood, Perkins, Loucks, Stout & Orfinger, P.A., Daytona Beach, for Appellant.
Donald E. Hawkins and David A. Burt of Hawkins, Hawkins & Burt, LLP., Daytona Beach, for Appellee.
SHARP, W., J.
Christopher Lumbert appeals from an order of the probate court which ruled that the proper beneficiaries under Molly Joy Carter's testamentary trust, which was established in her will, were Carter's brothers and sister rather than Carter's deceased daughter's (Lisa Lumbert) estate, of which he was the beneficiary. The trial court reasoned that because Lisa died without children surviving her or having exercised a power of appointment given her by the testamentary trust, that the undistributed assets of the trust should be distributed to Carter's brothers and sister, the named persons to inherit in the event Lisa died before attaining certain ages specified in the trust, and if she did not exercise her power of appointment. We reverse.
Both parties agree that there are no disputed issues of fact involved in this case. They also agree the wording of the trust is clear and unambiguous. However, they disagree in their interpretation of the language of the trust. Our review of this case is de novo.[1]
*1177 Carter executed her will on February 23, 1994. She contemplated that Lisa, her only child, would be her sole beneficiary, as well as her personal representative. The will set up a testamentary trust to distribute the assets of Carter's estate. Lisa was to receive distributions of the corpus of the trust in three stages, as she attained benchmark ages: one-third at age 35; one-half of the balance at age 40; and the remainder at age 45. In the event that Lisa did not survive to those ages, and if she did not exercise a power of appointment given to her under the trust (which she did not), the balance of the trust was to be distributed per stirpes to her lineal descendants and failing that[2] to Carter's brothers and sister.
Lisa married Lumbert. Subsequently, Carter died and her will was admitted to probate on August 30, 2000. Lisa was appointed to serve as Carter's personal representative. But she survived her mother for only fourteen months. On October 15, 2001, she died at the age of forty-one.
At that time, due to a delay in the administration of the estate, Lisa had only received a $30,000.00 distribution from the trust. It had only been funded to the extent of $100,000.00. The balance of the approximately 1.5 million dollar Carter estate was in the process of being administered.
The trial court determined that Article IV E. of Carter's will was controlling, as to Carter's intent regarding distributions to Lisa, under these circumstances. It provided in part:
If my daughter shall die, after this trust has been established for her benefit and before the entire principal of her fund has been distributed to her in fee, then in such event the Trustee shall distribute this trust fund (or the remainder thereof then held in trust) in such proportions and in such manner, outright or in trust or otherwise, to or for the benefit of any one or more persons, or corporations as my daughter may appoint by specific reference thereto in her Will admitted to probate; provided however that my daughter shall have no power to appoint the principal of this trust or any part thereof to herself or to her estate, or to her creditors, or to the creditors of her estate.... [If Lisa fails to appoint] then such part of the principal ... shall be distributed in fee, equally, unto her lineal descendants, per stirpes, or if none, unto my brothers and sister ...
However, reliance on that provision alone defeats two prior provisions of the will. Article IV C. provides:
When my daughter shall attain the age of 35 years, the Trustee shall distribute one-third of the trust corpus to her in fee and free of trust. Upon her attaining the age of 40 years, the Trustee shall distribute one-half of the then remaining trust corpus to my daughter in fee and free of trust. Upon her attaining the age of 45 years, this trust shall terminate and the Trustee shall distribute the balance of the then remaining trust corpus to my daughter in fee and free of trust.
Article IV D. provides:
If my daughter shall have attained any of such respective ages at the time *1178 when such trust fund is directed to be set aside for her, the Trustee shall distribute to my daughter such part of or parts or all, as the case may be, of such trust fund (instead of holding same in trust) as are directed to be distributed to her upon attaining such respective ages.
These provisions clearly mandate that Lisa's proportional shares of the trust corpus vested instantly, upon her attaining the designated ages. The Trustee was directed to distribute to Lisa her designated shares, "in fee and free of trust," upon her attaining the benchmark ages. Distribution of the corpus was merely a ministerial act. In fact, had Lisa attained the age of 45 prior to her death, no trust should have been established.
Article IV E. must be read in a more limited manner than it was interpreted by the probate court, in order to provide meaning or context for Article IV C. and D. Article IV E. was intended to deal with the situation in which Lisa died before attaining all the benchmark ages specified and there were assets then remaining in the trust to which she was not entitled to receive in fee and free of trust. Since at the time Lisa died she was not yet 45, the remaining approximately one-third of the trust assets to which Lisa was not entitled to have distributed "in fee and free of trust," should be distributed pursuant to Article IV E., to the default beneficiaries, Carter's brothers and sister. But the approximate two-thirds of the corpus to which Lisa had a vested right prior to her death must pass to her estate.
The third district resolved a similar fact situation in a similar manner. In that case, a beneficiary died before a trust was established. In re Bowen's Will, 240 So.2d 318 (Fla. 3d DCA 1970). The testator, Bowen, died on January 25, 1967 leaving a will which set up a residuary trust. The trust provided for payments to Bowen's two brothers, Cecil and William. Cecil died approximately 20 days before the trust was funded. The trial court ruled that the trust had not become an effective legal entity until it was actually funded, and that the trustee was only authorized to pay the beneficiaries who were living at the time the trust was funded. The appellate court reversed. It held that then section 731.21, Florida Statutes (1967) mandated that the right to benefits under a testamentary trust vests upon the death of the testator, and that the establishment or funding of the trust, or lack thereof, was not determinative. See also Estate of Miller v. Commissioner of Internal Revenue, 58 T.C. 699, 1972 WL 2515 (1972).
Section 731.21 provided:
Vesting of legacies or devises.The death of the testator is the event which vests the right to legacies or devises unless the testator in his will has provided that some other event must happen before a legacy or devise shall vest.
The current applicable statute, section 732.514, Florida Statutes (2000), has not been substantially changed, but it has been renumbered. It provides:
Vesting of devises.The death of the testator is the event that vests the right to devises unless the testator in his or her will has provided that some other event must happen before a devise shall vest. (emphasis added)
The law favors the early vesting of estates. Sorrels v. McNally, 89 Fla. 457, 105 So. 106 (1925). There is a presumption that a legacy or bequest is intended to be vested, and it applies more forcefully where the beneficiary is the testator's child. Sorrels. Similarly, in Rice v. Greenberg, 406 So.2d 469, 473 (Fla. 3d DCA 1981), the court commented that it was committed to the doctrine that remainders *1179 vest at the death of the testator, or at the earliest possible date, unless there is a clear intention expressed to postpone the time of vesting. In cases of doubt as to whether an interest is vested or contingent, the doubt should be resolved in favor of vesting. Rice.
In this case, the only event or conditions precedent required for vesting was Lisa's attainment of any of the benchmark ages as to her proportional share. There is no requirement in the will or trust that the funds to which she was entitled had to be actually distributed to her before her right vested, or that the trust had to be fully funded. Such an interpretation would place too much power in a trustee or personal representative to alter rights of beneficiaries simply by delaying testamentary trust distributions, or funding of testamentary trusts.
We conclude that Articles IV C. and IV D. of the will, and section 732.514, vested in Lisa her proportional shares when she attained the ages of 35 and 40, in fee and free of trust. See Sorrels; Rice; Bowen. The actual distribution of these shares was merely a ministerial act. However, the assets remaining in the corpus at the time of Lisa's death, and which had not yet vested in her due to her failure to attain the last benchmark age, should be distributed pursuant to Article IV E. of the will.[3]
REVERSED AND REMANDED.
GRIFFIN and TORPY, JJ., concur.
NOTES
[1] See Ware Else, Inc. v. Ofstein, 856 So.2d 1079, 1081 (Fla. 5th DCA 2003) (and cases cited therein); NCP Lake Power, Inc. v. Florida Power Corp., 781 So.2d 531, 536 (Fla. 5th DCA 2001) (and cases cited therein). See also Meier v. Denver National Bank, 164 Colo. 25, 431 P.2d 1019 (1967); Kelly v. Estate of Johnson, 788 N.E.2d 933 (Ind.App.2003); King v. Snohomish County, 146 Wash.2d 420, 47 P.3d 563 (2002); Massachusetts Co. v. Evans, 924 P.2d 1119 (Colo.App.1996).
[2] Lisa left no lineal descendants.
[3] The computations required on remand may not be simple. It will be necessary to compute and pro-rate growth or loss in the value of the assets, ordinary realized capital gains or losses, reasonable expenses, and unrealized capital gains or losses.