EVANDER, J.
 

 Frank G. Timmons, Jr., and Jacquelyn Timmons Forman (hereinafter jointly referred to as “the Timmons”) appeal from a final summary judgment entered in favor of co-trustees Myrtle Timmons Ingrahm and David Carter. We find that the trial court erred in failing to accord the term “lineal descendants” its legal definition in determining the intent of the testator/set-tlor, Frank Timmons, Sr. (“Frank Sr.”) Accordingly, we reverse the summary final judgment entered in favor of the co-trustees and direct that partial summary judgment be entered in favor of the Timmons.
 

 At the time of his death in 1999, Frank Sr. was married to Myrtle Timmons, n/k/a, Myrtle Timmons Ingrahm (“Myrtle”). He had two adopted children, the Timmons, from a previous marriage. Myrtle had four children — none of which was ever adopted by Frank Sr.
 

 In his will, Frank Sr. created two trusts: the Timmons Family Trust (“Family Trust”) and the Timmons Marital Trust (“Marital Trust”).
 
 [1]
 
 The Timmons Family Trust was valued at $650,000. The more substantial portion of Frank Sr.’s estate
 
 *863
 
 was placed in the Marital Trust. Myrtle was the sole income beneficiary of the trusts during her lifetime. She was also empowered, in her sole discretion, to annually remove from each trust, up to $5,000 or five percent (5%) of the principal, whichever was greater. The co-trustees were also given authority to encroach on the trusts’ principal as necessary for Myrtle’s maintenance and support. The Marital Trust provided that upon Myrtle’s death, the trust’s remaining principal (after payment of estate taxes) would be “poured over” into the Family Trust and distributed in accordance with the terms of the Family Trust. The Family Trust provided that upon Myrtle’s death, the trust assets were to be divided “into as many equal shares as there are children of mine then living and deceased children of mine leaving issue then surviving.”
 

 Frank Sr.’s will expressly defined “children” to include both his adopted children and Myrtle’s children:
 

 For the purposes of this Will, the term “children” shall include, in addition to my natural and adopted children, the children of my wife, MYRTLE C. TIM-MONS.
 

 Thus, if Myrtle had died shortly after Frank Sr., the principal of the Marital Trust would have “poured over” into the Family Trust, and the then-existing principal of the Family Trust would have been equally divided between the six “children” — Frank Sr.’s two children and Myrtle’s four children.
 

 The instant dispute arose as the result of Myrtle’s attempt, in 2007, to disinherit the Timmons through the purported exercise of a limited power of attorney granted to Myrtle in the Family Trust. The applicable provision reads as follows:
 

 [M]y said wife shall have the further limited power at any time during her lifetime to appoint by specific reference to this power in an instrument in writing executed and delivered to the Trustee all or any part of the principal of this trust, free and clear of any trust
 
 to and among my then living lineal descendants
 
 in such proportions and subject to such trust and conditions as she may direct. This limited power of attorney may be exercised by said wife even to the point of completely exhausting the entire corpus trust of this trust estate.
 

 (Emphasis added.) Specifically, Myrtle executed a document entitled “Exercise of Limited Power of Appointment” that attempted to grant all of the principal and income of the family trust, then in existence or later coming into the trust, to her four (4) natural children:
 

 Pursuant to the provisions of this limited power of appointment, it is the intent of this writing to exercise said power, which is executed by me and I hereby direct pursuant to the limited power of appointment that all principal and income of said trust now in existence or becoming a part of such trust as the result of my death as a pour over from the Marital Trust C or the Marital Trust A be distributed, per stirpes, among the natural children and their lineal descendants, of Myrtle C. Timmons Ingrahm free from further trust and outright.
 

 The effect of the exercise of this limited power of appointment shall be that the only beneficiaries of the Timmons Family Trust shall be my natural children and their lineal descendants. I understand that this exercise of limited power of appoint [sic] disinherits Frank G. Timmons, Jr., and his lineal descendants, and Jacquelyn Forman and their lineal descendants and that is my intent.
 

 The co-trustees are then alleged to have commenced distributing certain trust as
 
 *864
 
 sets to Myrtle’s children and to have denied the Timmons access to trust records.
 

 The Timmons brought an action against the co-trustees for breach of fiduciary duty and for an accounting. The Timmons asserted that Myrtle’s attempt to disinherit them was ineffective because the limited power of appointment could only be executed in favor of Frank Sr.’s “lineal descendants” and Myrtle’s natural children did not fall within this definition. In response, the co-trustees contended that Myrtle’s exercise of the limited power of appointment was lawful and had the intended effect of disinheriting the Tim-mons — thereby leaving them without standing to maintain their action.
 

 The parties subsequently filed cross-motions for summary judgment, agreeing that there were no disputed issues of material fact. The trial court denied the Timmons’ motion, granted the co-trustees’ motion, and entered final summary judgment in favor of the co-trustees. This appeal followed.
 

 The trial court’s decision was based on the interpretation of the language set forth in Frank Sr.’s will and, accordingly, our standard of review is
 
 de novo. Lumbert v. Estate of Carter,
 
 867 So.2d 1175, 1176 (Fla. 5th DCA 2004). In construing a will or testamentary trust, the intent of the testator or settlor should prevail and effect be given to his wishes.
 
 First Nat’l Bk. of Fla. v. Moffett,
 
 479 So.2d 312, 313 (Fla. 5th DCA 1985).
 

 In determining the intent of the settlor, a technical term used in a trust instrument should be accorded its legal definition, unless obviously used by the settlor in a different sense.
 
 Knauer v. Barnett,
 
 360 So.2d 399, 406 (Fla.1978). “Lineal descendant” or “descendant” is defined to mean “a person in any generational level down the applicable individual’s descending line.” It includes children, grandchildren, or more remote descendants but excludes collateral heirs. § 731.201(9), Fla. Stat. (2007). Adopted children come within the definition of lineal descendants.
 
 Lewis v. Green,
 
 389 So.2d 235, 241 (Fla. 5th DCA 1980).
 

 The co-trustees acknowledge that step-children do not ordinarily fall within the definition of “lineal descendants,” but contend that by expressly expanding the definition of “children” to include his stepchildren for purposes of his will, Frank Sr. similarly intended to expand the definition of “lineal descendants” to include his stepchildren and their descendants.” We reject this argument.
 

 While Frank Sr.’s will expressly provided for a different definition of the term “children” than its common or legal definition, no similar attempt was made to modify the common or legal definition of the term “lineal descendants.” The lack of an attempt to redefine “lineal descendant” reflects an intent to have the term interpreted in accordance with its legal definition. Furthermore, Frank Sr. used the term “lineal descendants” on only two other occasions in his will. In one paragraph, Frank Sr. bequested his personal property, in the event Myrtle predeceased him, “to my children who survive me, or if none of my children survive me, then to their lineal descendants, per stirpes.” In a different paragraph, Frank Sr. bequested certain shares of stock “to my son Frank Timmons, Jr., or his lineal descendants per stirpes.” Thus, in both of these instances, the term “lineal descendants” was used in a manner consistent with its legal definition. Finally, there is no language elsewhere in the will reflecting an intent
 
 on
 
 the part of Frank Sr. to grant Myrtle the power to disinherit his children in favor of her own children.
 

 
 *865
 
 As previously observed, a technical term used in a trust instrument should be accorded its legal definition unless
 
 obviously
 
 used by the settlor in a different sense.
 
 Knauer.
 
 Here, we believe that Frank Sr.’s testamentary document did not reflect an intent (and certainly not an “obvious” one) to expand the definition of lineal descendants to include step-children. Therefore, Myrtle’s purported exercise of the limited power of appointment in favor of her natural children was invalid.
 
 [2]
 

 REVERSED and REMANDED.
 

 TORPY and LAWSON, JJ., concur.
 

 [1]
 

 . Originally, there was only one marital trust, Timmons Marital Trust "B.” It was subsequently split into Timmons Marital Trust "A” and Timmons Marital Trust "C.” The split of Timmons Marital Trust "B” has no effect on the resolution of this appeal.
 

 [2]
 

 . The Timmons also argue that Myrtle could only exercise the limited power of appointment with regard to assets currently in the family trust and not as to assets that might subsequently “pour over" from the marital trust. Because we conclude that Myrtle's attempt to exercise the limited power of appointment was invalid, we find it unnecessary to address this argument.
 

 We also decline to address the Timmons' argument that they are entitled to receive an accounting from the co-trustees. Because the trial court determined that Timmons lacked standing, it did not address the issue of whether the Timmons would otherwise be entitled to an accounting. We believe it appropriate for this argument to first be presented to the trial court.