# Third District Court of Appeal

## State of Florida

Opinion filed January 18, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2238
Lower Tribunal No. 20-3751
_____

**John Taulbee and Ann Taulbee, etc.,**
Appellants,

vs.

**Amy Jeanne Kozel, etc.,**
Appellee.

An appeal from the Circuit Court for Miami-Dade County, Bertila Soto, Judge.

Law Office of Richard F. Joyce, P.A., Richard F. Joyce, Joseph P. George, Jr., P.A., and Joseph P. George, Jr., for appellant.

Golden Glasko & Associates, P.A. and William H. Glasko, for appellee.

Before SCALES, MILLER, and LOBREE, JJ.

MILLER, J.

Appellants, John Taulbee and Anne Taulbee, individually and acting in their capacity as the co-personal representatives of the Estate of David Taulbee, appeal a trial court order determining D.A.K. is a beneficiary under his biological father's will. We have jurisdiction. Fla. R. App. P. 9.170(b)(5). The issue on appeal is whether the termination of the parent-child relationship, effectuated through a surrender of parental rights by a plenary guardian on behalf of the decedent and an ensuing adoption and name change, severed D.A.K.'s right to recover under the will. Concluding it did not, we affirm.

## BACKGROUND

D.A.K., formerly named D.F.T., is the only biological child of the decedent and his wife, Lyobov Taulbee. In 2014, the decedent executed his last will and testament. The decedent named his wife as the principal beneficiary of the estate, and D.A.K.—identified by both his former name and biological relationship—as the sole contingent beneficiary if his wife predeceased him.[1] In 2016, the decedent executed a first codicil appointing

---

[1] The decedent left a one-dollar bequest to a daughter from a prior marriage.

appellants, his "second cousins," to serve as co-personal representatives if his wife predeceased him.[2]

The decedent's wife died, and the decedent served as D.A.K.'s primary caretaker until 2018, at which time he was diagnosed with severe dementia. In February of 2018, the decedent was declared mentally incapacitated and adjudged a ward of Miami-Dade County. D.A.K. was subsequently adjudicated dependent, and the Department of Children and Families filed a petition for termination of parental rights. Because he lacked the mental capacity to participate in the termination proceedings, the decedent was represented by a plenary guardian. The court determined his condition was irreversible, and he was not offered a case plan or any other avenue for reunification. The Department futilely searched for relatives with whom to place the child, and the plenary guardian executed a written surrender of parental rights on behalf of the decedent.[3] The dependency court terminated the decedent's parental rights, and D.A.K. was placed in the custody of the Department.

---

[2] If the devise to D.A.K. is invalidated, the decedent's estate would pass under the laws of intestacy to his only purported heirs, the co-personal representatives, who are first cousins once removed.

[3] The Department ruled out the only willing relative as unsuitable on the grounds he resided in the Russian Federation and spoke no English.

3

In 2019, D.A.K. was legally adopted by appellee, Amy Jeanne Kozel. The trial court ordered a change of name to reflect Kozel's surname and a new middle name. The following year, the decedent died, and appellants filed a petition for administration. D.A.K. responded with a caveat and sought a judicial determination he was a beneficiary under the will. The co-personal representatives filed opposition, contending that although the decedent "intended for his son to take under his will, . . . at the time of his death, and for some time before that, [he] did not have a son." The trial court determined that D.A.K. could recover under the will, and the instant appeal followed.

## STANDARD OF REVIEW

"A trial court's interpretation of the text of a last will and testament or trust instrument is reviewed de novo." Reno v. Hurchalla, 283 So. 3d 367, 369 (Fla. 3d DCA 2019); see also Timmons v. Ingrahm, 36 So. 3d 861, 864 (Fla. 5th DCA 2010). Factual findings, however, are reviewed for competent, substantial evidence. Estate of Brock, 692 So. 2d 907, 913 (Fla. 1st DCA 1996).

## ANALYSIS

The resolution of this case requires a close examination of several intersecting sources of law. Section 63.172, Florida Statutes (2021), entitled "Effect of Judgment of Adoption," and the common law define the legal

4

relationships that flow from an adoption. Concomitantly, the Florida Probate Code provides the polestar consideration in construing testamentary documents.

Under Florida law, "adoption severs the ties between the adopted child and his prior parents and affiliates the child with his adoptive parents." In re Estate of Kanevsky, 506 So. 2d 1101, 1102 (Fla. 3d DCA 1987). This principle is codified in section 63.172, Florida Statutes, which provides, in pertinent part:

> A judgment of adoption . . . terminates all legal relationships between the adopted person and the adopted person's relatives, including the birth parents, except a birth parent who is a petitioner or who is married to a petitioner, so that the adopted person thereafter is a stranger to his or her former relatives for all purposes . . . .

§ 63.172(1)(b), Fla. Stat. The statute extends the "stranger" designation to "the interpretation or construction of documents, statutes, and instruments, whether executed before or after entry of the adoption judgment, that do not expressly include the adopted person by name or by some designation not based on a parent and child or blood relationship." Id. The only exception to these general rules is that "rights of inheritance shall be as provided in the Florida Probate Code." Id.

The Florida Probate Code, in turn, circumscribes the legal effect of adoption on intestate succession. See § 732.108, Fla. Stat (2021).

5

Inheritance under a will differs substantially from inheritance at law. In testate estates, the Code provides: "The intention of the testator as expressed in the will controls the legal effect of the testator's dispositions." § 732.6005(1), Fla. Stat. (2021). This is consistent with the common law principle that "[t]he intention which controls in the construction of a will is that which is manifest, either expressly or by necessary implication, from the language of the will, . . . or, as is sometimes said, the testator's intention must be ascertained from the four corners of the will." Rewis v. Rewis, 84 So. 93, 94 (Fla. 1920); see also Pajares v. Donahue, 33 So. 3d 700, 702 (Fla. 4th DCA 2010) ("[T]he polestar to will interpretation is the intent of the testator.").

To glean the intent of the testator, "isolated words, phrases, and even paragraphs are not the determining factors." Peter B. Tiernan, Understanding the Limits of and Exceptions to Intent, Fla. B.J., Jan. 2014, at 39–40. Instead, "a reading of the entire instrument sets forth the tone for how specific provisions should be construed." Id. at 40. "[O]nce the intent of the testator is ascertained, the entire will should be considered and construed liberally to effectuate the testator's intent." McKean v. Warburton, 919 So. 2d 341, 344 (Fla. 2005).

6

In this case, casting aside the fact that the decedent lacked the mental capacity to participate in the termination of parental rights proceedings, surrender his parental rights, or revise his will after he was adjudged a ward, the will "expressly include[d] [D.A.K.] by name," albeit his former name. § 63.172(1)(b), Fla. Stat. Consequently, the "stranger" designation codified in section 63.172(1)(b), Florida Statutes, has no application to these facts. Similarly, the effect of adoption on intestate succession rights is of no moment because the decedent died testate.

Thus, distilled to its essence, appellants' position on appeal rests, as it did below, on the legal fiction that by changing his name to D.A.K., D.F.T. ceased to exist. It has been observed that "[a] man's name is of course more than simply a way of calling him. It is the verbal sign of his whole identity, his being in the world as a distinct person." D. Marvin Jones, A Bronx Tale: Disposable People, the Legacy of Slavery, and the Social Death of Kalief Browder, 6 U. Miami Race & Soc. Just. L. Rev. 31, 39 (2016). Nonetheless, courts have universally given effect to the intent of the testator even when a beneficiary is identified by a name different than his or her legal name in a testamentary document. See Patch v. White, 117 U.S. 210, 217 (1886); State v. Goodman, 181 S.W. 312, 316–20 (Tenn. 1915); State Tr. Co. v. Pierce, 136 A. 289, 289–90 (Me. 1927); Schauf v. Thomas, 498 P.2d 256,

262 (Kan. 1972); In re Morris' Estate, 76 Pa. Super. 50, 52–53 (Pa. Super. Ct. 1921); Leonard v. Crocker, 661 So. 2d 1244, 1245 (Fla. 3d DCA 1995). This view is consistent with the guiding principles espoused in the Florida Probate Code and under the common law.

Here, the adoption and name change terminated the parent-child relationship and the biological rights flowing from that relationship. These events, however, did not dilute the expressed intent of the decedent. The plain language of the will compels the conclusion that the decedent intended to devise his assets to his son, whom he always knew as D.F.T. Accordingly, the will is unambiguous, and the trial court correctly determined that D.A.K. remains a beneficiary. We therefore affirm the well-reasoned order under review.

Affirmed.